## Richmond.

### PRIEST, &C. v. WHITACRE, SHERIFF.

#### December 13th, 1883.

1. PRACTICE AT COMMON LAW—*Alteration—Burden of explanation.*—It is
encumbent on party offering instrument as evidence to explain any
appearance of alteration on its face. But where witness mentions a
written contract and opposite party demands its production, it is not
encumbent on the other party who does not offer, or claim under it,
to explain any appearance of alteration on its face.

2. IDEM—*Instructions.*—No instruction is proper unless there is evidence
before the jury to which it is relevant.

3. IDEM—*New trial.*—Though there be some evidence tending to establish
the fact in issue, or the evidence consists of circumstances or presump-
tions tending that way, the verdict will not be set aside and a new trial
granted, merely because the court, if upon the jury, would have given
a different verdict, nor unless the verdict rendered was plainly unwar-
ranted by the evidence.

4. IDEM—*Idem—Idem—Case at bar.*—C buys cattle and places them with
K to be grazed. K sells them to T for a fixed price to be paid for
when sold. Before sale they are levied on and sold under execution
against K. At trial of action by T on indemnifying bond given sheriff
by execution creditor, written contract between C and K is mentioned
by K in testifying as witness for T, and when that contract is pro-
duced on defendant's demand, it has on its face some appearance of
alteration.

HELD:

    1. T was under no obligation to explain the appearance of alteration.
    2. Instructions directing jury to found their verdict on such appear-
       ance of alteration are irrelevant and improper.
    3. On the facts proved the verdict for T will not be disturbed on ac-
       count merely of such appearance of alteration.

Error to judgment of circuit court of Fauquier county
rendered in action on indemnifying bond at the relation of

Samuel Triplett against James Priest, executor of John Murray, deceased, and others, defendants, who are the appellants. The questions here decided are on instructions asked for at the trial by the defendants and refused, and on their motion for a new trial, which was overruled.

Opinion states the case.

*Brooke & Scott,* for the plaintiffs in error.

*Thomas Smith,* for the defendants in error.

LEWIS, P., delivered the opinion of the court.

The plaintiffs in error, who were the defendants in the court below, were obligors in a certain indemnifying bond, executed to the sheriff of Fauquier county, and upon which the action was brought for the benefit and at the relation of Samuel Triplett, claiming to be the owner of certain cattle which had been levied on and sold by the said sheriff by virtue of an execution in his hands against E. D. and Thos. J. Kincheloe, in favor of the executor of John Murray, deceased. A verdict and judgment were rendered for the plaintiff; and on writ of error and *supersedeas* to that judgment the case is now here.

It appears that on the 5th day of December, 1878, George W. Chappelear bought of G. W. Dobbins, a cattle dealer, sixty head of cattle, at the price of $1,486.87, for which Dobbins executed to Chappelear a written receipt. On the same day, thirty of these cattle (the cattle in question) were turned over by Chappelear to Thomas J. Kincheloe, one of the defendants in the execution referred to, under a sealed contract, of that date, between the parties, by which it was stipulated that Kincheloe was *to feed and graze* the cattle upon certain conditions. So much of that contract,

as it appears in the record, and as is necessary to be noticed, is as follows :

"That the said George W. Chappelear shall have absolute control over the cattle, saying when and at what time the same shall be sold, and by whom the same shall be marketed, and the proceeds of sale turned over to said Chappelear to liquidate the debt, together with interest on same, and the balance to be paid over to said Kincheloe's tenant, Samuel Triplett. To further secure said Chappelear, the said Kincheloe has this day assigned and set apart all his corn, fodder and straw, &c., grown upon premises, unto said Chappelear, to feed said cattle."

At the trial the plaintiff testified that he was the tenant of Kincheloe for the year 1879, as he had been the previous year, upon the terms of receiving one-half of the crops made upon the farm, and one-fourth of the profits of the cattle grazed thereon; that in November or December, 1878, the cattle in question were placed on the farm by Kincheloe, who stated that they were the property of Chappelear; that the witness grazed the cattle, believing they belonged to Chappelear and were under his control; that in the month of July, 1879, certain parties went to the farm with Kincheloe to buy the cattle, he claiming to be acting as the agent of Chappelear to sell them; that to a proposition made to buy the cattle the witness objected, on the ground that the grazing season not being over he was unwilling to lose the additional profit to be made by grazing them the balance of the season; that, thereupon, Kincheloe, the professed agent of Chappelear, sold the cattle to witness for $48 per head, to be paid for out of the proceeds of the sales of the cattle when they were marketed; that witness had not seen Chappelear, but was responsible to him for the agreed price of the cattle; that he bought the cattle without notice of any levy upon them, or of the execution

against Kincheloe. And that the cattle were afterwards sold by the sheriff, notwithstanding he was notified by the witness that they were his property.

Kincheloe was examined as a witness for the plaintiff, and testified that the cattle were bought and paid for by Chappelear; that soon thereafter, thirty of them were taken to the farm of the witness, which was leased by the plaintiff, to be grazed; that they belonged to Chappelear; that he (Kincheloe) had no interest whatever in them, and that he sold as the agent of Chappelear to Triplett in the manner stated by the latter.

In the course of the examination of the witness, he having spoken of a written contract between himself and Chappelear, he was required by the defendants to produce it, which he did, and which was the sealed contract already referred to. Upon an inspection of this contract, a witness, called as an expert by the defendants, testified that the letter "*s*" and the words "*tenant, Sam'l Triplett,*" which appear together in immediate connection in the contract, were with different ink from the balance of the contract, or if not, that the ink must have been frozen when they were written, but that he could not say when they were written, or whether before or after the delivery of the contract.

With that letter and words in the contract, it would provide that the proceeds of the cattle, when sold, should be "turned over to said Chappelear to liquidate the debt, together with interest on same, and the balance to be paid over to said *Kincheloe's tenant, Sam'l Triplett.*" Without that letter and words the contract would provide that the said balance should be paid over "*to the said Kincheloe.*"

There being no further testimony offered on either side in respect to the contract, and the evidence being concluded, the defendants requested the court to instruct the jury that

if they "believe from the evidence that the contract be-
tween Chappelear and Kincheloe, dated 5th December,
1878, has been altered by the addition of words 's—tenant,
Sam'l Triplett,' then it is incumbent on said Triplett, the
party claiming as plaintiff in this cause, by virtue of said
contract, to explain said alteration, and that in the event of
his failing so to do, the said instrument, as to its legal effect,
is to be construed as if no such additional words had been
inserted."

This instruction the court properly refused to give. The
law upon the subject is thus laid down by Greenleaf: "If,
on production of the instrument, it appears to have been
altered, it is incumbent on *the party offering it* in evidence
to explain this appearance. Every alteration on the face
of a written instrument detracts from its credit, and ren-
ders it suspicious; and this suspicion *the party claiming
under it* is ordinarily held bound to remove." 1 Greenl.
on Ev., § 564. In the present case the instrument in ques-
tion was not produced by the plaintiff, but by another wit-
ness, upon the demand of the defendants. The plaintiff
was not a party to, and was not claiming under, it; nor is
there anything to show that he even knew of its existence
before it was produced at the trial. He did not claim to
be entitled to any part of the profits derived from the
grazing of the cattle, but claimed that he was the absolute
owner of the cattle by purchase from Kincheloe as the
agent of Chappelear. And if, in fact, at the time of the
alleged purchase, Chappelear had parted with his interest
in them, in whole or in part, so that Triplett did not ac-
quire the interest he claimed to have acquired, it was for
the defendants, by evidence satisfactory for the purpose, to
have established that fact.

The second instruction asked for and refused is as fol-
lows: "If the jury believe that the said contract was re-

ally made between the parties thereto, without such addition, then the legal effect of said instrument was to make the thirty head of cattle therein named the property of T. J. Kincheloe, with a lien resting thereon in favor of said Chappelear to the extent of $742.44, with interest from the 5th day of December, 1878, and that said Chappelear could convey to Triplett no greater interest in said cattle."

There was no evidence offered tending to show that the contract had been altered, and consequently there was nothing in the case to which the instruction was relevant. In the absence of such proof, the jury were bound to take the contract as it was produced, and the instruction was therefore properly refused.

The third instruction asked for, is as follows: "If the jury believe that the alleged contract between Chappelear and Triplett was made for the sale of the cattle, with the understanding that the purchase money contracted to be paid was to come out of the proceeds of said cattle when sold by Triplett, and that before the sale could be made by Triplett said cattle were levied upon under the executions of *Murray's Ex'or* v. *Kinchloe,* and sold by the sheriff, after proper indemifying bond was given, then said Triplett was not liable to said Chappelear by reason of such purchase ; and the remedy of Chappelear, if any, was upon the footing of said indemnifying bond."

It is sufficient to say, in respect to this instruction, that like the second, it is relevant to no testimony which was submitted to the jury. The testimony of Triplett, corroborated by that of Kincheloe, and uncontradicted, was to the effect that the cattle were bought by the former at an agreed price, to be paid for when the cattle were sold, but for which he (Triplett) was liable at all events to Chappelear. His liability was in nowise to be measured by the sum for which the cattle should be sold in the market, but

was absolutely fixed by the terms of the contract at $48 per head, and the cattle thereupon became his property.

Enough has already been said in respect to the contract of the 5th December, 1878, to show that the circuit court did not err in refusing to give the fourth and last instruction asked for by the defendants, which is as follows: "That the contract of the 5th December, 1878, was in its nature a deed of trust, and unless recorded had no validity against the execution creditor, Murray's executor, at the time of the levy of his execution, unless at that time he had notice of the same." By the terms of the contract the cattle were turned over to Kincheloe to be fed and grazed, but absolute control of them was retained by Chappelear, and the proceeds were to be paid over to him, the balance over and above the sum paid for them, with interest, to be paid to Triplett. Nothing was to be paid to Kincheloe, and it does not appear that any interest in the cattle was acquired by Kincheloe. What motives actuated the parties in entering into the contract does not appear, nor is it material that they should.

Nor did the court err in overruling the defendants' motion for a new trial. The facts as to the purchase of sixty cattle by Chappelear, and the subsequent sale of thirty of them to the plaintiff, were satisfactorily established by the testimony and receipt of the cattle dealer from whom they were bought, and by the testimony of Triplett and Kincheloe. Upon the evidence introduced the jury found for the plaintiff, and we see no reason to disturb the verdict. It is well settled that where some evidence has been given tending to establish the fact in issue, or where the evidence consists of circumstances or presumptions, a new trial will not be granted merely because the court, if upon the jury, would have given a different verdict. The evidence must be plainly insufficient to warrant the verdict, to

justify the court in setting it aside. And this restriction applies *a fortiori* to an appellate court. "For in the appellate court there is superadded to the weight which must always be given to the verdict of a jury fairly rendered, that of the opinion of the judge who presided at the trial, which is always entitled to peculiar respect upon the question of a new trial." *Blosser* v. *Harshbarger*, 21 Gratt. 214, and cases cited. The judgment is affirmed.

FAUNTLEROY, J., dissented.

JUDGMENT AFFIRMED.