# Richmond.

## ELGIN v. HALL.

### DECEMBER 16th, 1886.

1. INSTRUMENTS—*Alteration—Burden of explanation.*—Every alteration on face of written instrument detracts from its credit and makes it suspicious ; and this suspicion party claiming under it is ordinarily bound to remove. *Priest* v. *Whitacre*, 78 Va. 151.
2. IDEM—*Case at bar.*—The alterations on face of receipts offered in evidence by defendant, render them worthless, he not having explained them.

Appeal from decrees of circuit court of Loudoun county, rendered October 25, 1882, and May, 1, 1883, respectively, in cause wherein Edgar Jackson, administrator of John Elgin, deceased, is plaintiff, and James M. Hall is defendant. The decree of the circuit court was adverse to plaintiff, and he obtained an appeal to this court.

Opinion states the case.

*John M. Orr* and *Joseph Christian*, for appellant.

*Edward Nichols*, for appellee.

LACY, J., delivered the opinion of the court.

This is an appeal from decrees of the circuit court of Loudoun county, rendered at the April and October terms, 1883. On the 9th day of January, 1872, John F. Elgin, deceased,

sold a tract of land to James M. Hall for $1,980. Of this
$660 was paid in cash on that day, and two bonds taken of
Hall by Elgin for the same amount each, as the amount paid
in cash—one on twelve months' time, the other on twenty-
four months' time. On the 3d day of September, 1881, Elgin
filed his bill against Hall for specific performance of the con-
tract, asserting the debt due as per the two bonds, with the
following credits: $200 paid January 29, 1873; $150 paid
April 4, 1873; $100 paid January 12, 1874; $90 paid April
27, 1874; $100 paid October 3, 1874; $185 paid June 4,
1877—aggregating the sum of $525 paid in all. Hill demur-
red to the bill for want of equity, and answered, admitting the
purchase as stated in the bill and setting up other payments
for which he had receipts. The amount of $271 December
4, 1872; another amount of $150 January 13, 1873, and
another of $50 January 1, 1874—making the amount $471—
for which he filed receipts, which are disputed and denied, and
claiming a credit for $100 for cattle sold in December, 1874,
for which he did not claim to have a receipt. The receipts
above stated of December 4, 1872, for $271; January 13, 1873,
for $150, and of January 1, 1874, for $50, were objected to by
the plaintiff, Elgin having died, and the suit revived in the
name of the appellant as his administrator. The cause was
referred to a commissioner for an account of the debt; the
commissioner allowed these disputed receipts, and the court
confirmed the report, and decreed accordingly; whereupon the
case was brought to this court on appeal by the plaintiff.

The ground of objection to these receipts is, that they appear
on their face to have been mutilated and defaced by erasures
and additions of a fraudulent character. These receipts being
before this court in the original, by order of this court, and
being seen and inspected in the original, appear to have been
much altered; these alterations are patent and obvious to the

naked eye, but by the use of a magnifying glass, and holding against the light, they are easily read as originally written.

The receipt marked Exhibit No. 1, filed with the answer, reads in the record thus:

"1872. December 4. Received of James M. Hall two hundred and seventy-one dollars, being cash payment on land. JNO. F. ELGIN."

As it originally was, it reads thus:

"1871. December 4. Received of James M. Hall two hundred and seventy-one dollars, being cash payment on land *this day sold to him.* JNO. F. ELGIN."

The figures and words in italics showing the alterations.

Exhibit No. 2 reads in the record thus:

"Received of James M. Hall one hundred and fifty dollars. Jan. 13, 1873. JNO. F. ELGIN."

The original shows plainly that the words "*and fifty*" were inserted in the receipt between the word "hundred" and the word "dollars," the word "*and*" being written in a very different hand at the end of one line, and the word "*fifty*" at the beginning of the next line, extending the line in each case beyond the original length.

Exhibit No. 5 reads in the record thus:

"Jan. 1, 1874. Received of J. M. Hall fifty dollars, being part payment on land. JNO. F. ELGIN."

As it was originally written, it read thus:

"1872. Jan. 1. Received of J. M. Hall fifty dollars, being part payment on land. JNO. F. ELGIN."

The date being changed from 1872 to 1874; and when this receipt No. 5 is placed just under, and in juxtaposition with No. 1, they plainly show that they have been cut apart after the last one was written, as the letters of the lower receipt are cut off on the upper paper, and the bottom of the J., in the signature, Jno. F. Elgin, is cut off the lower piece of paper.

As originally written, No. 1 was written on the same piece of paper with No. 5, No. 5 being at the bottom. No. 1 was dated "1871, December 4," and No. 5, "1872, January 1st." They thus appear to have been written before the contract of January 9, 1872, when receipt of the whole of the cash payment of $660 is acknowledged, and the date of the bonds was the same day. So, as originally written, they could be of no value in a transaction had on the 9th of January, 1872, and No. 1, in terms, declares that it is for *cash payment* on land, without supplying the erased words. But by being changed in dates both are made to appear as dated after the contract, and after the whole cash payment was acknowledged on the back of the contract, in the interest of the party holding and offering them.

As to No. 2, the added "and fifty" is an obvious and patent addition, which can profit nobody, unless explained by the party offering it in evidence. We have no occasion to go into any speculation, however, as to the cause or agent of these changes made in the interest of the defendant who offers in evidence these papers to prove the payment of money by him. The rule of law is that he must explain these things (which he has not attempted to do), or he must lose all benefit, take nothing, on account of them. "Every alteration on the face of a written instrument detracts from its credit, and renders it suspicious; and this suspicion the party claiming under it is ordinarily held bound to remove. Though the effect of the alteration of a legal instrument is generally discussed with reference to deeds, yet the principle is applicable to all other instruments. The early decisions were chiefly upon deeds, because almost all written engagements were anciently in that form; but they establish the general proposition that written instruments which are altered, in the legal sense of that term, are thereby made void." 1 Greenleaf, 605, 606.

Mr. Greenleaf says that the ground of this doctrine is, in the first place, that of public policy, to prevent fraud, by not permitting a man to take the chance of committing a fraud without running any risk of losing by the event when it is detected. See also *Priest* v. *Whitacre*, 78 Va. R. Opinion of Lewis, P.

These receipts have been destroyed by the alterations in them, and are so discredited as to be worthless and void, and must be rejected altogether in making up the account in the case of the amount of the debt.

The circuit court having held them good and valid to prove the payments they are offered to show, the decrees of that court will be reversed and annulled, and the cause remanded to that court, that a new account of the debt may be taken and further proceedings had therein in order to a final decree.

DECREES REVERSED.