**Richmond.**          ＼

100   719
101   737

## CONSUMERS ICE COMPANY v. JENNINGS.

December 4, 1902.

Absent, Buchanan, J.

1. PLEADING—*Parties—Action by Party to Contract—Beneficial Owner—Variance—Demurrer.*—The party with whom a contract is made may maintain an action at law thereon in his own name, and, if the recovery be for the benefit of another, that fact may be set out in the declaration, or endorsed on the writ or the declaration, but the statement or endorsement is unnecessary, and is no part of the record, and the fact that the contract sued on is set forth in the declaration and does not disclose the beneficial interest of the party for whose benefit the action is brought does not show a variance between the declaration and the contract, and is no ground for a demurrer.

2. EVIDENCE—*Altered Papers—Foundation for Introduction.*—When an objection is made to the introduction of an interlined paper as evidence, it is usually sufficient foundation for the introduction of the paper to show that the interlineation was made before delivery, leaving to the jury the ultimate determination of the actual time of interlineation where that is controverted.

3. BILL OF EXCEPTION—*Ruling on Question of Evidence—Answer Expected.*—The action of the trial court in refusing to permit a witness to answer a question will not be reviewed by this court if the bill of exception fails to show what was proposed to be shown by the witness.

4. BILL OF EXCEPTION—*Exclusion of Question to Witness—Answer Also Excluded.*—When a question which has been answered is ruled out by the trial court, the answer thereto is likewise excluded, although the bill of exception to the ruling of the court is silent as to the answer.

5. CONTRACT—*Usage of Trade—Effect on Contract—Case at Bar.*—A trade usage may control the mode of performance of a contract, but can-

not change its intrinsic character; but if it could have such effect in any case, it could not affect the case at bar as it had not become so general and well established as to affect the parties with notice of it, and there is no proof of knowledge of it.

6. CONTRACTS—*Alterations—Case at Bar.*—Any material alteration in a written contract, made by a party thereto, after it has been once made and delivered, will render the contract void as to any party who did not know of and consent to it at the time it was made, unless he subsequently ratified it. In the case at bar, a contract for the sale of ice restricted the purchaser to sales "from his ice-box" and forbade sales "from his wagons on the street." The word "his" before "wagons" was interlined. This alteration was deemed material, but it was for the jury to say whether, as was claimed, it was made before delivery.

7. DAMAGES—*Profits on Sub-Contracts.*—In an action to recover damages for a breach of a contract to deliver chattels, profits which the purchaser would have made on sub-contracts actually made by him are sufficiently certain to be recovered.

8. EVIDENCE—*Alteration of Contract—Burden of Proof as to Liability on.*—Where a liability is sought to be imposed by an alteration in a written contract, and such liability is denied because of the alteration, the burden is on the party claiming under the contract to satisfy the jury by a preponderance of the evidence that the alteration was made under such circumstances as not to affect his right to recover.

Error to a judgment of the Law and Equity Court of the city of Richmond, rendered January 8, 1901, in an action of *assumpsit*, wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Reversed.*

The opinion states the case.

*Henry R.* and *John G. Pollard*, for the plaintiff in error.

*A. B. Dickinson* and *C. V. Meredith*, for the defendant in error.

HARRISON, J., delivered the opinion of the court.

This suit was instituted by R. T. Jennings, suing for the benefit and at the risk and cost of himself, as trustee, against

the Consumers Ice Company, to recover damages for a breach
of the following contract, dated April 3, 1900:

"I hereby agree to furnish Mr. R. T. Jennings what ice he
needs at $5 per ton of 2,000 pounds, in quantities of one ton
or more, one year from the above date. The said ice is to be
sold from his ice-box, and not from his wagons on the street.

JOS. S. MONTGOMERY,

For Consumers Ice Company."

Two of the words appearing in this contract were interlined,
viz., the word "*ice*," the eleventh word in the contract, and the
word "*his*," immediately preceding the word "wagons" in the
last line of the contract. The result of the trial was a verdict
and judgment for $1,500 in favor of the plaintiff, to which
judgment a writ of error was awarded bringing the case, for re-
view, to this court.

The demurrer to the declaration was properly overruled. The
contention made in its support is that the suit should have been
brought in the name of R. T. Jennings alone, and not in his
name for the benefit of himself, as trustee; that R. T. Jennings,
trustee, being the beneficial plaintiff, and the contract of which
profert is made being with R. T. Jennings, constitutes a fatal
variance between the declaration and the instrument sued on.

The beneficial interest under the contract was vested in R. T.
Jennings, as trustee, and as such trustee he was the real plaintiff
in the suit. The contract being with R. T. Jennings, in him
was vested the legal title to the benefit of the contract, and
therefore the suit was properly brought in his name for the use
of the beneficial plaintiff. The declaration contains a full and
accurate description of the contract sued on. The insertion
therein of the clause that the suit was for the benefit of R. T.
Jennings, trustee, was not necessary. It is no part of the plead-
ing, and therefore cannot be objected to as a variance. *Clark-
sons* v. *Doddridge*, 14 Gratt. 42; *Fadeley* v. *Williams*, 96 Va.
397.

In the latter case Judge Buchanan says: "It is usual when an action is brought in the name of one person for the benefit of another to state that fact in the body of the declaration, or to endorse it thereon, or on the writ. It is useful and convenient to do so to give notice to the defendant of the rights of the beneficial plaintiff, and to enable the court to protect him by its orders, but this is not necessary. The statement is no material part of the pleading. The cause of action is complete without it, because he is not a party on the record."

Objection is further made to the action of the court in allowing the introduction of the paper without sufficient evidence to remove the suspicion attaching to the interlineations therein.

The court required the interlineations to be explained by the plaintiff, who testified that they were made before the paper was signed and delivered. This is usually regarded as sufficient foundation for the introduction of an interlined paper; the final issue, where the time of interlineation is controverted, being for the jury.

Bills of exception Nos. 2 and 4, which are taken to the action of the court in refusing to allow the witness Montgomery to answer certain questions propounded by the defendant, cannot be considered, because what was proposed to be shown by the witness is not given, and therefore the court cannot judge of its materiality. *Life Ins. Co.* v. *Pollard*, 94 Va. 146; *Driver* v. *Hartman*, 96 Va. 518.

It appears from bill of exception No. 3 that the witness Montgomery, introduced on behalf of the defendant, was asked the following question: "You say you have known contracts containing clauses similar to this one—'to sell from ice-box.' What is the custom of trade as to their understanding of that?" To which question the witness answered as follows: "It means that the purchaser may sell ice from his ice-box only, and at retail only, say, from two pounds up to one hundred pounds,

and a man who runs an ice-box is never supposed to use more than a ton a day." The court ruled out the question, but the bill of exception fails to show that the answer was ruled out as well, and it is contended that the answer must be considered as having gone to the jury. This is a technical view and cannot be sustained. The question being ruled out, the answer went with it. The jury could hardly be presumed to have considered the answer to a question that was ruled out by the court in its presence.

It appears from the evidence that during the month of March, 1900, the ice companies of Richmond entered into an agreement not to sell ice to persons who would peddle the same on the streets. This agreement went into effect for the first time on the first day of April, 1900. Prior thereto they had sold without such restriction or limitation. The contract sued on bears date April 3, 1900, leaving but one intervening day. It is not likely that in so short a time a custom of trade would spring up and become so general and well-established as to have any legal effect upon the contract under consideration. But apart from this, a custom of trade cannot change the intrinsic character of the contract of the parties who are ignorant of such custom. *Ferguson* v. *Gooch*, 94 Va. 1. In the case cited it is said to be an elementary proposition that a custom of trade may control the mode of performance of a contract, but cannot change its intrinsic character. There is no evidence that the plaintiff knew of the custom mentioned. The witness Montgomery, who signed and delivered the paper on behalf of the defendant, does not in his answer say that there was such a custom as that suggested by the question, but proceeds to interpret the paper, and to show that an entirely different contract was intended from that which was reduced to writing by the parties and offered in evidence. This was not permissible, and the question and answer were properly ruled out.

Bill of exception No. 5 is to the action of the court in giving and refusing certain instructions.

Two instructions were given for the plaintiff, marked respectively Nos. 1 and 4, both of which were objected to by the defendant. No. 1 must be read in connection with instruction "F," which was given for the defendant. These two instructions taken together told the jury that any material alteration in the terms of a written contract, after it has once been made and delivered, will render the contract void as to any party who did not know of and consent to the alteration at the time it was made, unless such person has in some manner subsequently ratified the act; that they must determine from the evidence whether the word "his," interlined in the contract, was put there by J. S. Montgomery before the plaintiff finally accepted the contract, or the interlineation was made after the paper was signed by the defendant, and without his knowledge or consent; that if they believed that the interlineation was made before the signing and delivery they must find for the plaintiff, but, if they believed it was made after the execution and delivery, they must find for the defendant.

The jury were further told that if they believed the word "his" was interlined before the signing and delivery, that then, under the contract with the word "his" as part thereof, the plaintiff had the right to sell ice to anyone he might desire, although he might know and expect the purchasers to peddle the ice from their own wagons, and that the defendant was not justified, because the plaintiff made such sales, in refusing to deliver under the contract such ice as the plaintiff might order; and that if the defendant did refuse to deliver any more ice to the plaintiff because he sold to persons who would peddle the same from their wagons, it was a breach of the contract by the defendant, and they must find for the plaintiff.

Taking the language of the contract, and the usual and ordinary import of the words used, the construction given by the lower court appears to be free from objection, and there was no error to the prejudice of the defendant in instruction No. 1 given for the plaintiff.

Instruction No. 4 for the plaintiff, which is objected to, and instructions B, C and D, offered by the defendant and refused, are all addressed to the measure of damages recoverable in the event the jury should find for the plaintiff. It appears from the evidence that, after entering into the contract here involved, the plaintiff made contracts with several parties in the ice business to sell them ice at a profit of $1 per ton on its cost price, as fixed by the contract. Among those contracted with by the plaintiff were Ford, Burley, and Crabbin, each of whom agreed to take ice at $6 per ton. Instruction No. 4 limits the recovery to the loss sustained by the failure of Jennings to fill his contract with these three parties, each of whom testified to the amount of ice which he could reasonably expect, from his past experience in the ice business, to dispose of. It thus appears that the profits were certain, and the amount thereof a matter of simple calculation.

In *Grubbs* v. *Burford*, 98 Va. 553, it is said that "in ascertaining damages where there is an interference with, or a withholding of property, or a breach of contract, the gain prevented, if provable, may be recovered. Profits which are the difference between the agreed price of something contracted for and its ascertainable value or cost, are recoverable. See *Alleghany Iron Co.* v. *Teaford*, 96 Va. 372; and *Trigg* v. *Clay*, 88 Va. 330.

In the light of these authorities, instruction No. 4 correctly stated the law applicable to the case, and instructions B, C and D, which told the jury, in varying form, that the plaintiff could not recover as damages any profits which he should have received from his resale of the ice to other parties, were properly rejected.

The remaining assignment of error to be considered is the action of the court in refusing instruction A asked for by the defendant, and modifying instruction G.

Instruction A was as follows: "The court instructs the jury that the alterations on the face of the instrument offered in

evidence by the plaintiff, detracts from its credit, and makes it suspicious, and this suspicion the plaintiff was bound to remove by a preponderance of evidence."

The modification of instruction G was "that there is no extra burden on the plaintiff to show that the contract was not altered by the insertion of the words 'ice' and 'his'—for on that question the burden of proof is equal."

The contract in question was executed and delivered to the plaintiff on the 3d day of April, 1900, and remained in his possession until produced on the trial. The interlineation of the word "ice" does not appear to have been material, but the interlineation of the word "his" changes the whole meaning of the contract. Without the word "his" the plaintiff was limited to selling by retail from his ice-box. With the word "his" interlined, he was only excluded from selling from his own wagons on the street, but his right to sell by wholesale to other wagons to be peddled on the street was without restriction. It was, therefore, a vital question whether or not the interlineation of the word "his" was made before or after the contract was signed and delivered.

The burden is always upon the plaintiff (when the general issue is pleaded) to make out his case, and to establish by a preponderance of evidence every fact necessary to a recovery by him. The case at bar forms no exception to the general rule. In the case of an altered paper, if objected to on that ground, it cannot be introduced at all until sufficient foundation therefor has been laid to satisfy the court as to the propriety of letting it go before the jury. As already stated, the introduction of the paper is usually allowed upon the statement of the plaintiff that the interlineation was made before it was signed and delivered. But this action of the court in admitting the paper does not affect or shift the burden of proof when the fact is controverted, and there is a contest before the jury. In such case, the burden is upon the party having possession of the instrument, and claim-

ing under it, to satisfy the jury by a preponderance of evidence that the alteration was made under such circumstances as not to affect his right to recover. *Priest* v. *Whiteacre,* 78 Va. 151; *Elgin* v. *Hall,* 82 Va. 680; *Hodnett* v. *Pace,* 84 Va. 873; *Slater* v. *Moore,* 86 Va. 26. Instruction "A" asked for by the defendant should have been given, and it was error to make the addendum mentioned to instruction G. Instruction E, touching the same subject, asked for by the defendant, was properly refused.

For the error in refusing instruction "A," and adding to instruction G, the judgment complained of must be reversed, the verdict set aside, and the cause remanded for a new trial.

*Reversed.*