10763

GUERIN v. HUNT *ET AL.*

(110 S. E. 71)

1. WILLS—ALTERATIONS PERMISSIBLE IF LAW OF EXECUTION COMPLIED WITH.—A testator may alter or change his will as often as he pleases, and in any respect that suits his fancy, provided the alterations are made in compliance with the requirements of law for the due execution of wills.

2. WILLS—ALTERATIONS GENERALLY PRESUMED MADE AFTER EXECUTION.—When alterations have been made in a will, the general presumption of law is that they were made subsequent to the execution of the paper, and are therefore void, and the burden of proof rests on the proponent of the will to show that they were made prior to execution.

3. WILLS—FILLING IN OF BLANKS PRESUMED DONE PRIOR TO EXECUTION.
—The general rule that alterations in a will are presumed made
after execution does not apply to the filling in of blanks, and where
blanks were left in a will as typewritten for names and amounts,
which were filled in before the will was offered for probate, the pre-
sumption was that they were filled in prior to execution.

4. APPEAL AND ERROR—QUESTION IS ONE OF LAW WHEN THERE IS NO
EVIDENCE OR NO CONFLICT, BUT OTHERWISE QUESTION OF FACT.—
Under Code Civ. Proc. 1912, § 62, limiting the jurisdiction of the
Supreme Court in probate matters to questions of law, where there
is no conflict in the testimony or no evidence upon a material mat-
ter, the question presented is one of law; but, if the evidence is con-
tradictory, it is ordinarily one of fact.

5. WILLS—ALTERATIONS REJECTED WHEN ATTESTING WITNESS CANNOT
TESTIFY THAT THEY WERE IN WILL WHEN EXECUTED.—An attesting
witness to a will must be prepared to attest not only the mere fact
of signature, but, in the presence of evident alterations, that the
paper produced was the paper executed, and that its condition
when produced was its condition when executed; and, if this is
not done, the alterations will be rejected and the will sustained as
originally drawn, unless the alterations as a matter of law may be
presumed made prior to execution.

6. WILLS—TESTIMONY OF ATTESTING WITNESS HELD INSUFFICIENT TO
OVERCOME PRESUMPTION THAT PARTICULAR ALTERATION WAS MADE
AFTER EXECUTION.—Where the first page of a will, as presented
for probate, was typewritten, with additions in the handwriting of
will was executed there was writing "on the top, middle, bottom, and
on both sides, the testimony of an attesting witness that when the
will was executed there was writing "on the top, middle, bottom, and
both sides," but that she did not read it, was insufficient to overcome
the presumption that an addition at the end of a paragraph in the
body of a will was made before execution, there being other in-
sertions nearer the middle and the bottom of the page.

7. WILL—ALTERATION HELD OF SUCH NATURE AS NOT TO BE PRESUMED
MADE BEFORE EXECUTION.—While there may be alterations in a will
of such a nature that the law will presume them to have been made
before execution, where a typewritten paragraph gave the residuary
estate absolutely to a daughter, and was followed by a period, an
addition in the testator's handwriting at the end of the paragraph
providing that she should not have the property until she was 30
years old, but might have the interest when she became 21, was
antagonistic to the typewritten portion, and could not be presumed
made prior to execution.

Before TOWNSEND, J., Charleston, August, 1920. Modified.

Proceeding by J. A. Guerin, as petitioner, against Reta Baring Hunt and Florence Goodrich Hunt to prove the will of A. Morton Hunt in solemn form. From a decree admitting said will with alterations to probate Florence G. Hunt appeals.

*Mr. Paul M. MacMillan,* for appellant, cites: *Presumption being that alterations were made after execution. burden of proof was not shifted by slight affirmative evidence:* 86 S. C., 477; 40 Cyc., 1275; 17 L. R. A. (N. S.), 184; 61 N. Y., 903; 95 N. Y., 145. *Where blanks are left for names and amounts presumption does not apply:* 13 N. Y. St., 183. *Witnesses must know of alterations at time of execution:* 4 Strob., 191.

*Messrs. J. Waites Waring* and *F. F. Carroll,* for respondent, cite: *Court had right to hear matter at Chambers without consent of guardian ad litem:* 1 Civ. Code 1912, Sec. 3833, as amended by 31 Stat., 806. *Jury trial was a right given to either party on request:* 35 S. C., 417; 4 S. C., 37. *Jurisdiction may be conferred by consent:* 16 S. C., 276; 82 S. C., 4; 79 S. C., 302. *Proceedings presumed to be regular:* 98 S. C., 136. *Jurisdiction of Supreme Court:* Code Proc. 1912, Sec. 62. *Quantity of evidence is not necessarily controlling:* 101 S. E. 834; 88 S. E., 912; 102 S. E., 502. *Affirmative evidence is stronger than negative:* 90 S. E., 683; 17 Wall, 384; 44 Fed., 583; 56 Kan., 667; 1 Grenl. Ev., Sec. 74. *Alterations different from* 74 S. C., 189. *Court on appeal will not interfere with findings of fact in a law case:* 105 S. E., 893; 74 S. C., 189; 99 S. E., 809; 98 S. E., 848; 100 S. E., 148; 100 S. C., 452; 99 S. E., 752. *Presumption and burden of proof in establishing a will:* 2 A. & E. Enc. L. (2nd. Ed.), 281; 10 S. C. L., 554; 46 S. C.

*L., 387.*  *No objection to a will that it is written on sep-
arate sheets*:   88 S. E., 964; 78 S. E., 72.

December 8, 1921.

The opinion of the Court was delivered by ACTING AS-
SOCIATE JUSTICE E. MARION RUCKER.

A. Morton Hunt died in the City of Charleston on the
1st day of October, 1918, leaving  an estate  valued  at
three-quarters of a million dollars, and his will was ad-
mitted to probate in common form in Charleston County
on the 7th day of August, 1919.   Application was made
to have the will proved in solemn form, and on the 15th
day of October, 1919, J. A. Guerin, the respondent herein,
was ordered to prefer the usual petition, which was done.
Mr. Hunt left surviving him his  widow,  Reta  Baring
Hunt, and his daughter by a former marriage, Florence
Goodrich Hunt, these being his sole heirs at law.   The
heirs at law were duly notified and the daughter, Florence,
being a minor, was represented by her guardian ad litem.

At the hearing the plaintiff-respondent produced the sub-
scribing witness to the will, which is as follows:

of The Town of Summerville, Dorchester County and State of
South Carolina, sole Executor of this my Last Will and Testament,
admonishing said Executor to fully carry out the full intent
and expressed provisions hereof.

In Witness Whereof, I A. Morton Hunt, have hereunto set my hand
and seal this ____ day of January in the year of our Lord
one thousand nine hundred and _____ and of the 145th year
of the Independence of the United States of America.

_____ (L. S.)

Signed, Sealed, pronounced, published and declared by the
above named Testator, A. Morton Hunt, as and for his Last Will
and Testament in our presence, who in his presence and at his
request and in the presence of each other have subscribed our
names as witnesses hereto.

_____        Summerville, S. C.

_____        Summerville, S. C.

_____        Summerville, S. C.

On the 27th day of February, 1920, the Judge of Probate rendered his decision, holding that the paper introduced was the last will and testament of A. Morton Hunt, and included in the will all the interlineations and alterations appearing on the first page of the will. From this decision both Mrs. Reta Baring Hunt and Miss Hunt, by her guardian ad litem, appealed to the Circuit Court, and on the 31st day of August, 1920, Hon. W. H. Townsend, at Chambers, rendered his decree affirming the judgment of the Probate Court. From this decree the daughter, Florence G. Hunt, alone appealed.

The evidence at the trial showed on the part of the proponent of the will, Dr. J. A. Guerin, that the will was executed at his drug store in the town of Summerville; that the will consisted of two sheets of paper, not fastened; that he and the subscribing witness, Herbert F. Dunning, never saw the first sheet upon which the alterations appear, but that the other subscribing witness, Mrs. Eloise Guerin, saw the first sheet when Dr. Guerin went forward in the store to get Mr. Dunning to come and attest the execution of the will. She testified:

"I saw the front page and there was writing on the top, middle, bottom, and both sides, but I did not read what was written."

The body of the will is typewritten, and the interlineations are in the handwriting of the testator.

Upon the part of Mrs. and Miss Hunt the evidence was that the typewritten portion of the will was prepared for Mr. Hunt some time before its execution, and there was some evidence that there were no interlineations on the will prior to its being taken to the drug store for execution; and, admittedly, no interlineations were made there.

After the execution of the will there is a conflict of testimony as to what took place, Doctor and Mrs. Guerin stating that they returned with Mr. Hunt to his home, and spent the evening with him and his family; Mrs. Hunt and

Miss Hunt testifying that Dr. and Mrs. Guerin accompanied Mr. Hunt to the gate, but did not enter, and that Mr. Hunt, upon entering the house, secured pen and ink, and spent some time in writing upon the paper. The paper was turned over to Mrs. Hunt the next morning, when it was in the condition as offered for probate.

In deciding the case as presented, it is deemed proper to consider certain general propositions of law applicable to the alterations of wills.

The alterations of wills differ essentially from the alterations of other papers. In the latter case there is involved the right of alteration, whereas in the case of wills there is no question of the right to alter; a man may change his will as often as he pleases, and in any respect that suits his fancy. The question then to be considered is not that of the right to alter, for that is conceded, but whether such alterations were made in compliance with the requirements of law for the due execution of wills.

What effect, then, have interlineations in a will in the absence of explanations as to when such interlineations were made, where the language of the original will is decipherable? In the case of *Pringle v. McPherson,* 2 DeSaus, 524, it was held that an alteration in a will after its execution will not revoke it, and in *Gardiner v. Gardiner,* 65 N. H., 230; 19 Atl., 651; 8 L. R. A., 383, the Court said that alterations unexplained do not affect the validity of the will as originally executed; and to the same effect is our case of *Means v. Moore,* Harp., 314.

When it is evident that alterations have been made in a will, the general presumption of law is that the alterations were made subsequently to the execution of the paper, and are therefore void (*Toebbe v. Williams,* 80 Ky., 561; *Van Buren v. Cockburn,* 14 Barb. [N. Y.] 118), and unquestionably the burden of proof rests upon the proponent of the will of showing that such alterations were made prior to execution (*Dodge v. Has-*

*kell,* 69 Me., 429; *Ely v. Ely,* 6 Gray [Mass.] 439; *Priest v. Whitacre,* 78 Va., 151).

3   An exception to the general rule that the law presumes alterations in a will to have been made after execution is that, where blanks are left in wills, the filling of the blanks is presumed to have been prior to execution. In the matter of *Voorhees,* 6 Dem. Sur. (N. Y.) 162. With these propositions of law before us, we come to an application of them to this case.

There are four evident blanks in the typewritten will. The first is in the third paragraph, where the amount left to his wife, Reta Baring Hunt, is left blank, and is filled in by the sum of $50,000. The next one is in the fourth paragraph, where a gift is made to some one for an unknown amount, and is filled by the name of Eloise Guerin, and the amount is fixed at $5,000; and the last blank is in the last paragraph, where the name of the executor is left blank, and is filled by the name of J. A. Guerin.

Under the law as set out, all of these interlineations, or filling of blanks, are presumed to have occurred prior to the execution of the paper. The other alterations at law are presumed to have been made subsequently to the execution of the will, and are therefore void unless satisfactorily shown by the evidence to have been made before.

The testimony relied on by the respondent to sustain the contention that the presumption of the law as to these alterations is overcome consists entirely in the evidence of Mrs. Guerin, together with such deductions as may be proper to draw from the paper itself.

The testimony introduced by the proponent and the contestants upon this was somewhat, though not necessarily, contradictory; and, were it not for the finding of the Probate and Circuit Courts that the testimony offered by the proponent was to be accepted, it might be that the findings of fact heretofore reached could well be held to be erroneous.

The testimony of Mrs. Guerin upon these alterations was as follows:

"I saw the front page, and there was writing on the top, middle, bottom, and both sides, but I did not read what was written. It was under a strong electric light. The paper in evidence looks like the one I saw that night. I noticed the first page very carefully, and it made an impression on me that it had writing on all sides."

It is upon this evidence that the Circuit Court rests its finding that all the alterations appearing upon the paper were put there by the testator prior to the execution of the will and are therefore valid portions of it. And in this connection it is strongly urged by counsel for the respondent that the sole question before this Court is a question of fact, and not of law, and that under Section 62, Vol. 2, of the Code this Court has jurisdiction only of questions of law.

If the question before the Court is a question of fact, as this is a law case, then the only thing for the Court to do is to affirm the judgment below. It is not free from difficulty, and has been considered carefully, not only on account of the effect of the rule to be announced, but also because of the grave interest to the litigants in the large sum involved.

It may be premised that, where there is no conflict in testimony, or where there is no evidence upon a material matter, the question presented is one of law and not of fact. If, however, the evidence is contradictory, then the question is ordinarily one of fact, and not of law.

There can be no question that an attesting witness must be prepared to attest not only the mere fact of signature, but, in the presence of evident alterations, that the paper produced was the paper executed, and that the condition it is in when produced was its condition when executed. If this is not done, then the presumption

of law comes in rejecting the alterations and sustaining
the will as originally drawn, unless such alterations as
matter of law may be presumed to have been made prior to
execution.

Mrs. Guerin's testimony is found to be true both by
the Probate Court and the Circuit Court, and, as far
as the facts there stated are concerned, are not re-
viewable by this Court. Her statement was that there
was writing "on the top, middle, bottom, and both sides."
What do these facts portend? The alterations on the right
side of the first page, at the top of the page, at the left of
the page (but it does not appear which entry to the left
was seen, as there are two separate alterations on the left
margin, the existence of either of which would have given
full credence to the testimony of Mrs. Guerin; however,
this becomes unimportant in this case by reason of the ad-
mission of counsel for protestant, not contesting these al-
terations) and the alteration at the bottom as follows:

"I also ask Florence to give J. A. Guerin five thousand
dollars for his services as guardian."

This is as far as the testimony of Mrs. Guerin goes.
The contest before the Court is over the alteration at the
end of the fifth paragraph as follows:

"This not to be given her till she is 30 years of age. She
may be given interest from 21st year of her age."

This alteration is not at the top, either side or bottom.
Between this alteration and the bottom there are two other
alterations; the one appointing J. A. Guerin executor, and
the one requesting his daughter to give J. A. Guerin $5,000
for his services as guardian. Nor can this alteration be
said to have fallen into the writing seen by Mrs. Guerin
in the middle of the page, because here again there are
other alterations that more closely correspond with the
testimony of the witness, the entry of "Fifty thousand
($50,000)" in the first blank, and also the writing "Eloise
Guerin" and "Five thousand" in the second and third

blanks. There is no visible connection between the testimony of Mrs. Guerin and the fact found. There is no evidence that the alteration added at the end of paragraph 5 was made prior to the execution of the will. Giving the statement of Mrs. Guerin full credit, no language used by her identifies this alteration as existent at the time she saw the paper just before the execution. It is to be remembered that she only saw the paper for a brief period, and she read none of the alterations; she only saw handwriting. She cannot therefore identify any alteration except as stated by her. To hold that this alteration comes within the language used as to writing at the "bottom" or "middle" is to presume a fact in order to override a presumption of law.

The absence of any evidence upon a material matter—and the alteration here is material—presents a question of law, and not of fact.

It was urged by counsel for the respondent that this alteration was necessary from the language of the paragraph showing that something was to be added. The question presented is perplexing. It is doubtless true that there may be alterations in a will that the law presumes to have been made before the execution other than the filling of blanks. In the alterations allowed here by presumption of law were the ones filling in the blanks. The first, the insertion of $50,000 in the blank sum to be given his wife. In the second blank, where a name was evidently to be filled in, by the name of Mrs. Guerin, and in the blank for the amount by the sum of $5,000, and in the fourth alteration, where the name of the executor was left blank, by the insertion of the name of J. A. Guerin. But in the alteration under consideration there was no blank left in the will as prepared, as was the case in each of the other instances, and the paragraph ended in a period, so the alteration became an addition, and not the filling in of a blank which was necessary in order to give meaning

to the paragraph. Not that this in itself would be sufficient to necessarily reject the alteration, but in this case the addition was antagonistic to the typewritten portion. The typewritten paragraph bequeathed the residue of his estate to his daughter, "her heirs and assigns absolutely and forever"; then comes the alteration that this was not to be given to her until she was 30 years old, though she could have the interest thereon when she became 21 years of age.

In behalf of such an alteration there is no presumption of law that it was made prior to execution of the will, and it falls within the rule that alterations are presumed to have been made after the execution of the will; and, as there is no evidence that this alteration was in fact made prior to the execution of the will, it follows that it must be held to be no part of the will.

I am of opinion that the paper offered for probate as the last will and testament of A. Morton Hunt was his last will and testament, and that alterations appearing thereon as handwriting in the typewritten will made in filling the blanks were made prior to execution of the will, as were also the alterations made upon the sides, top, and bottom of the first page, but that the alteration made at the end of the fifth paragraph is not a portion of the will.

The judgment appealed from should accordingly be modified, and it is so ordered.