## 11815

### ENTERPRISE BANK *ET AL.* v. RICE *ET AL.*

#### (128 S. E., 872)

EXECUTORS AND ADMINISTRATORS—EXECUTOR'S PLEDGE NOT TO WITHDRAW FUNDS ON DEPOSIT IN BANK HELD NOT BINDING ON BENEFICIARY OF ESTATE ENTITLED THERETO, NOR RIGHT TO QUESTION VALIDITY OF PLEDGE WAIVED.—Executor's pledge not to withdraw funds on deposit in bank until certain time *held* not binding on beneficiary of estate entitled thereto, nor was beneficiary's acceptance of executor's check covering such funds, and her issuance of receipt releasing him "from all liability by reason of delay or refusal to honor checks drawn against the deposit of such funds," a waiver of her right to question validity of pledge, so that tender of payment of mortgage debt to bank, made by check on such funds, was good, particularly where kept good until after time when pledge expired, which was prior to commencement of foreclosure suit.

Before JOHNSON, J., Colleton, July, 1924.   Reversed.

Action by the Enterprise Bank and another against Jennie M. Rice and others.   Decree for plaintiffs, and defendants appeal.

*Messrs. Miller, Huger, Wilbur & Miller* for appellants.

*Messrs. Waring & Brockinton,* for respondents, cite: *Power of executor:* Thompson on Wills, Sec. 399.   *Set-off against a bank:* 1 Moore on Banking, 632; 3 R. C. L., 647; 117 S. E., 415.

July 30, 1925.

The opinion of the Court was delivered by MR. JUSTICE WATTS.

This action was commenced by the service of summons and complaint in the Court of Common Pleas, Colleton County, in April of 1923.   The plaintiff sought to foreclose two mortgages given by the defendant, Jennie M. Rice, for $5,000 and $2,500, respectively, which were owned at the time of the commencement of this action and held by the plaintiff Enterprise Bank.   The defendant, Brick House Plantation, Inc., purchased a part of the property covered

by the lien of the said mortgages from the defendant, Jennie M. Rice, and is, therefore, made party to this action. The case was referred by consent to F. K. Myers, one of the Masters of Charleston County, who found for the plaintiff. The matter came on to be heard before his Honor, J. Henry Johnson, presiding Judge, at Walterboro, S. C., on the —— day of ———, 1924, upon exceptions filed by the defendant's to the Master's report. From the order of his Honor, Judge Johnson, confirming the Master's report, the defendants appeal to the Supreme Court.

The exceptions, four in number, raise the sole question, one of law, involving the legal effect of the tender by Mrs. Rice, under the circumstances. Under the opinion of this Court (*Guerin v. Hunt,* 118 S. C., 32; 110 S. E., 71), Miss Hunt was entitled to the estate when she became of age. She became of age in August, 1921. The executor signed the pledge agreement in November, 1921, for one year.

We think that the rights of the parties in this case are unaffected by the executor's pledge; that the transaction sought to be enforced here did not in terms violate the depositors' "pledge", even if we should hold it to be binding upon the beneficiary of the pledged funds; there is no doubt that the pledge expired November 10, 1922, at which time the appellants' tender was still open.

We think that the Master's finding, sustained by the Circuit Judge, "that the right of Florence G. Hunt, as beneficiary of the estate of A. M. Hunt, to question the validity of the pledge of the funds of the estate of A. M. Hunt in the Enterprise Bank, was waived under the circumstances of this case," was erroneous. To affirm the judgment would be contrary to the principles of equity and would work a great hardship on the appellants.

All exceptions are sustained, and judgment reversed.

MR. CHIEF JUSTICE GARY and MR. ACTING ASSOCIATE JUSTICE R. O. PURDY concur.

MR. ACTING ASSOCIATE JUSTICE R. O. PURDY: I concur in the opinion of Mr. Justice Watts. In differing from the Justices who have dissented, I do not question the princples of law announced in the dissenting opinion, but only the application of those principles to this case.

This was not a case in which an executor was suddenly confronted with a situation in which he had to assume the responsibility of acting, without an opportunity to consult the beneficiary. The beneficiary had become of legal age to represent herself several months prior to the time of the pledge to continue the money on deposit.

The capacity in which the executor was acting was known to the bank, and the consent or refusal of the beneficiary could easily have been obtained. The beneficiary does not appear to have been consulted.

The Master found, however, that, in accepting the check from the executor and giving a receipt in settlement, Miss Hunt waived her right to the possession and control of the money, except under the pledge, and that she tacitly, by such receipt, acknowledged the status of the fund.

We think the effect of receiving this check and giving an acknowledgment to the executor was to release the executor from any personal liability, and did not create any new relationship to the bank nor ratify the act of the executor, and, as has been suggested by the argument of the appellants, her manifest intention was "to insist upon such measure of control of her property as she may find physically possible under the circumstances."

The money in the bank belonged to Miss Hunt. It was simply in the name of the executor on the books of the bank, and from the time that she received the check from the executor she was entitled to direct control of the money, and the check was in the nature of a declaration on the part of the executor that he had no further interest in the fund.

When the bank received notice of this transfer of the fund in name, it was its duty to honor the check of Miss Hunt, and the failure and refusal to transfer the fund on its books to her credit could not defeat her rights. A bank has a right to refuse a deposit, but this was not the refusal to receive a deposit. The money was already in the bank, and it was simply a matter of bookkeeping to make the change from the name of the executor to the name of the real owner.

The statement, therefore, that there was no fund against which she could draw the check for $6,226, loses its persuasive force in the light of these facts. It was the fault of the bank, and not the fault of Miss Hunt, that the change was not made on the books. Therefore, upon the presentation of the check for $6,226, indorsed to its order, the bank should have canceled the evidences of debt held against Mrs. Rice and surrendered them, and should have charged the item to the account of Miss Hunt.

MR. JUSTICE COTHRAN (dissenting): I do not concur in the conclusion reached by Mr. Justice Watts ·in this case for the reasons which follow:

Action for the foreclosure of two mortgages, executed by the defendant, Jennie M. Rice, upon a tract of land in Colleton County, known as the Brick House Plantation. One of the mortgages was given to the Beaufort Bank, to secure a note of $5,000, dated December 4, 1917, due six months after date, assigned to the plaintiff, Enterprise Bank, January 3, 1920; the other was given to Pat Wall to secure a note of $2,500, dated December 7, 1917, due six months after date, assigned to the plaintiff, Enterprise Bank, July 1, 1920. The other defendants claim interests in the real estate, the Brick House Plantation, Inc., as grantee of a part of the land, and Johnson, Standard Oil Company and Weiters & Son, as judgment creditors; all of these interests were acquired subsequently to the execution of the mortgages.

The controversy, mainly upon its face between the Enterprise Bank and Jennie M. Rice, assignee of the mortgages and mortgagor, respectively, arises out of the following facts, which disclose the defense of Mrs. Rice.

On November 1, 1921, J. A. Guerin, as executor of the will of A. Morton Hunt, had on deposit with the Enterprise Bank $17,500. At that time the bank, having become seriously embarrassed, went into liquidation, and on November 3, 1921, was taken over by the State Bank Examiner, under the statute. He decided to reopen the bank for business, provided that the depositors, as of November 10, 1921, would agree, by written pledge, not to withdraw their deposits for a period of one year, the pledges to expire on November 10, 1922. Ninety odd per cent of the depositors, including J. A. Guerin, as executor, signed the pledges, and the examiner, considering that sufficient, reopened the bank for new business and the collection of old accounts, in December, 1921. Thereafter the accounts of the old depositors and the new were kept separate upon the books of the bank.

At the time the executor signed the pledge, on November 10, 1921, certain matters connected with the will of A. Morton Hunt, particularly the interest of Miss Florence G. Hunt, were in litigation, and on December 8, 1921, this Court handed down its opinion in the case of *Guerin v. Hunt,* 118 S. C., 32; 110 S. E., 71, deciding that the limitations sought to be imposed in the will of Mr. Hunt, deferring the ejoyment of the corpus of the estate left to Miss Hunt until she should attain the age of 30 years, were invalid, and that the whole estate, principal and interest, vested in her upon her attaining majority, which occurred in August, 1921.

On March 24, 1922, the executor had a settlement with Miss Hunt, whether partial or final does not appear, in which he turned over to her checks upon various banks in which the estate funds were deposited, including a check

upon the Enterprise Bank for $17,500, the amount upon deposit to his credit therein as executor, the deposit to which his written pledge referred. Miss Hunt executed a receipt for the various checks, including the check upon the Enterprise Bank, to the executor, which receipt contained this clause: "and release him from all liability by reason of any delay or refusal to honor checks drawn against the deposit of said funds."

Thereafter, on April 3, 1922, Miss Hunt presented to the Enterprise Bank, for deposit to her credit, the check for $17,500 which she had received from the executor. This check was drawn upon the deposit affected by the executor's pledge. The bank refused to honor the check and pass the proceeds to the deposit account of Miss Hunt unless she would sign a pledge card not to withdraw the deposit before November 10, 1922, the limit of the executor's pledge. She declined to sign the pledge, and the deposit remained to the credit of the executor as theretofore pledged.

In the meantime, Mrs. Rice had arranged with Miss Hunt to take up the mortgages then held by the Enterprise Bank, the total amount due upon both being $6,226; and on the same day that Miss Hunt presented the executor's check for deposit, April 3, 1922, Mrs. Rice tendered to the bank a check of Miss Hunt, payable to the order of Mrs. Rice, for the $6,226 in full settlement of the two mortgages. This check was drawn against the contemplated deposit of the executor's check. The tender was refused, and later, in November, 1922, the bank went into final liquidation. Mrs. Rice claims to have kept the tender good thereafter.

The defendant, Mrs. Rice, and the Brick House Plantation, Inc., contend: (1) That the executor was without authority of law to bind the deposit by the pledge in question; (2) that Miss Hunt did not authorize or ratify the pledge made by the executor; (3) that it was the duty of the bank to honor the check of the executor in favor of Miss Hunt, upon the deposit to his credit as executor, notwithstanding

the pledge, to accept such check indorsed by Miss Hunt and deposit it to her credit, and to honor the check which Miss Hunt gave to Mrs. Rice, which the latter indorsed and tendered to the bank in settlement of the mortgages; (4) that the failure of the bank to discharge its duties as above outlined had the effect of extinguishing the lien of the mortgages and to permit Mrs. Rice to set off this check, which she received from Miss Hunt, against the mortgage debts.

The case was referred by consent to F. K. Myers, Esq., Master of Charleston County, who made a report recommending that the defenses be overruled and an order of foreclosure and sale taken. Upon exceptions to his report, the Circuit Judge, in a formal order, confirmed the Master's report and ordered a sale. The defendants referred to have appealed.

The Master does not appear to have decided the question of the executor's power to execute the pledge. He refers to it as a question that may have been raised by Miss Hunt after her right to possession and control of the fund had been decided by this Court, but that "her right was specifically waived upon her acceptance of the check of Guerin as executor, representing this account, and the tacit acknowledgment in her receipt of the status of the said fund; * * * that the effort to transfer the said account and to apply a part of it to the payment of the indebtedness of Rice to the bank, was, in effect, a withdrawal, and an attempt to create a preference in favor of the beneficiary of the Hunt estate."

As to the power of the executor to make the pledge that he would not withdraw the deposit within the period of a year from November 10, 1921:

The relation of the bank to the depositor was that of debtor and creditor; the deposit was payable on demand upon the check of the depositor; the legal title to this deposit was in the executor, being personal property of the testator in process of distribution; the pledge was, there-

fore, in effect, an extension of the time of payment of the debt "on demand," to the period fixed in the pledge.

All that the law requires of a personal representative is that he shall act with the utmost good faith—*uberrima fides*—and due regard to the interests of the estate, with diligence and discretion, in collecting and compromising debts, and in giving indulgence to debtors, in reference to the assets of the estate.

In the case at bar this was the situation: The bank was confessedly insolvent; it was in the hands of the bank examiner; some loss on the deposit was inevitable; in the exercise of his discretion and best judgment, the sudden crash and consequent sacrifice might be avoided as the bank examiner concluded, by the reopening of the bank, allowing it to do business as a live institution, the better to collect its assets and possibly to produce some income, provided the depositors would sign the pledge not to withdraw their deposits for a year. It evidently was not anticipated that every single depositor would accede to the proposition, and when 90 per cent and over signed the pledge, the bank was reopened. The fact that the hope was not realized does not affect the validity of the transaction. If that had been his own money, the executor doubtless would have joined the hopeful 90 per cent. No charge of bad faith or even unwarranted conduct is made against him, and that fact produces the conviction that there was neither.

That a personal representative, acting fairly, honestly, and in the exercise of a sound discretion in the interest of his trust may grant indulgence to a debtor is declared in the case of *Campbell v. Linder,* 50 S. C., 169; 27 S. E., 648:

"If Lee Linder left behind him, when he died, a debt due by the plaintiff, then it was in the power of his executors to grant an indulgence to his debtor."

I think, therefore, that under the circumstances of this case the executor was perfectly right in consenting to the extension, that the reopening of the bank was a sufficient

consideration to support his agreement, and that Miss Hunt was bound thereby, regardless of her supposed sanction of it.

This conclusion is sufficient to dispose of the appeal in the affirmance of the decree, but there is another consideration to which attention may be directed: Assuming that the executor was not authorized to sign the pledge, extending the time of payment of the deposit, and that Miss Hunt did not authorize or ratify that conduct on the part of the exec· utor, I do not think that the position of the defendants can be sustained as stated, viz.: That, because it was the duty of the bank to honor the check of the executor, in favor of Miss Hunt, upon the deposit to his credit as executor, notwithstanding the pledge, and because it was the duty of the bank to accept such check indorsed by Miss Hunt, and deposit it to her credit, and because it would have been the duty of the bank to accept the check which Miss Hunt gave to Mrs. Rice, and which she indorsed and tendered to the bank in full settlement of the mortgages, the mortgage lien was extinguished, and Mrs. Rice had the right to set off the check against the mortgage debt.

This conclusion consists of a concatenation of "becauses", which is weakened by the failure to establish a very important link; namely, that it was the duty of the bank to enter Miss Hunt as a depositor, to the extent of the check given her by the executor.

The validity of the claimed tender depends upon the validity of the check of Miss Hunt, which Mrs. Rice indorsed and tendered to the bank; the validity of that check depended upon Miss Hunt's having the amount of it on deposit to her credit. That she did not have it is conceded. The reason why she did not have it was that the bank declined to honor the check of the executor to her after he had agreed not to check against the deposit before November 10, 1922. Whether that was a valid reason or not is beside the mark. If the bank's reason was a valid

one, that ends the discussion; if it was not, the remedy of Miss Hunt or of the executor was against the bank for dishonoring a valid check. In either event the fact remains that Miss Hunt did not have on deposit a sum sufficient to meet the check which she had given to Mrs. Rice. The latter certainly has no cause of action, sufficient to sustain a set-off, based upon the bank's failure of duty to the executor or to Miss Hunt.

Besides, I know of no law which compels a bank to accept a deposit from any one. It is not a common carrier, under an obligation to serve every applicant; it may for the most whimsical reason, decline to accept one as a depositor. It did refuse to accept Miss Hunt as a depositor, it declined to establish the relation which would have made Miss Hunt's check good, and that, it appears to me, puts an end to any claim Mrs. Rice may assert based upon the Hunt check payable to her.

In 7 C. J., 628, it is said:

"A bank is not, however, required to keep the deposits of every person who offers money for this purpose, but may decline to do business with them, whom for any reason it does not wish to serve."

See *Jaselli v. Bank,* 36 App. D. C., 159; 31 L. R. A. (N. S.), 763; Ann. Cas. 1912-C, 119.

In the last case cited the Court says:

"A bank may arbitrarily select its customers, and its act in declining an account is not open to question."

In *Elliott v. Bank,* 128 Iowa, 275; 103 N. W., 777; 1 L. R. A. (N. S.), 1130; 111 Am. St. Rep., 198, the Court says:

"A bank may receive or decline deposits, and do business with whom it pleases."

Having the arbitrary right to refuse a deposit, the fact that it may have given an invalid reason for declining to receive it cannot alter the situation, in the case at bar, that Miss Hunt did not have on deposit funds sufficient to meet

12—S. C. R.—132.

her check to Mrs. Rice, which is essential to the validity of the alleged tender made by the latter.

I agree fully with the Master, in his conclusion that the effect of sustaining the contention of the defendants would be to allow Miss Hunt a preference over the other creditors of the bank to the extent of the check which she gave to Mrs. Rice. It appears to me that the litigation in this matter presents more of a contest between Miss Hunt and the other creditors of the bank than between Mrs. Rice and the bank. There is no question but that Mrs. Rice owes the balance unpaid upon the mortgages, whether to the bank or to Miss Hunt is a matter of small moment to her, whereas a decision of the appeal in her favor inures to the benefit of Miss Hunt alone, who would then secure the preference alluded to.

I think, therefore, that the decree of Judge Johnson should be affirmed.

MR. JUSTICE MARION concurs.