## BURKETT v. WHITTEMORE.

1. Will—Probate—Operation.—The admission of a will to probate by the Court of Probate establishes the fact that the will has been made according to the form prescribed by statute, but does not preclude inquiry in the Court of Common Pleas as to the validity of its provisions, or of their proper construction and legal effect, or as to whether it operates as the execution of a power.

2. Married Woman—Will.—A married woman made her will, having under the law at that time no testamentary capacity except in the execution of a power. She afterwards acquired land, was after that invested with full testamentary capacity, and finally died, being still a married woman. *Held,* that such land did not pass under this will, there having been no republication after the removal of her legal disability to devise.

3. Ibid.—Ibid.—Powers.—A married woman having a power to appoint to uses by deed or will, made her will, and therein declared her appointment. Subsequently she conveyed the land by deed under the power, receiving half of the purchase money in cash, and the remainder was secured by bond and mortgage. Afterwards this vendee, in consideration of the cancellation of this bond and mortgage, reconveyed the land to a trustee in trust for this married woman, conferring upon her the same powers as she originally had. And then she died, leaving her said will unrevoked. *Held,* that the land passed under the will as an execution of the power originally possessed, unaffected by the conveyance and reconveyance by deed. Mr. Chief Justice McIver, *dissenting.*

4. Ibid.—Ibid.—Ibid.—A will could not operate as an execution of powers originally and only conferred in a deed of conveyance subsequent in date to such will. Mr. Justice McGowan, *dissenting.*

Before COTHRAN and PRESSLEY, JJ., Sumter, June, 1886, and October, 1888.

Action for partition by Henry T. Burkett against Emily E. Whittemore and others, commenced April 14, 1886. The Circuit decree of Judge Pressley, omitting its statement of facts, was as follows:

After that time [June 15, 1867], said Penelope bought other parcels of land, without reserving to herself at time of purchase any power to dispose of these parcels by will. My judgment is, that said lands so purchased do not pass under her will, but are subject to partition, because the subsequent removal by statute of her disability as a married woman to devise lands, could not, as to these lands, make the previous will valid unless it had been republished. As to the house and lot in the town of Sumter, there can be no question about the larger portion of that. But the contest is as to that portion of it which said Penelope sold to Margaret Dougherty. It is contended for defendant, Emily, that plaintiff's claim to any part of that portion has been barred by lapse of time since the will of Penelope was admitted to probate. I adjudge that it is not so barred, because said will was not proved in "due form of law," but only in "common form." Yet there are two aspects of this case, through which, in my view thereof, it clearly appears that the devisees of said Penelope are entitled under her will to the whole of said lot.

1st. Because the sale of a portion of said lot to Margaret Dougherty, connected with a mortgage thereof for the purchase money and reconveyance by her heirs in discharge of said mortgage, was not such disposal of said lot by Penelope as destroyed her previous devise of it. The cash portion of the purchase money being personalty, would still pass to her devisees by said will; so, also, the bond secured by mortgage of the lot sold. That mortgage, also, was such an interest in the land as would make it pass under said will upon reconveyance to the use of testatrix. Though our statute of 1791 makes the mortgagee the owner in fee of the mortgaged land, yet a mortgage for the purchase money is something more than a mere lien. It is such an estate in the land as makes it needless for the vendor to require renunciation of dower

from the wife of a vendor who executes mortgage for the purchase money. It is also such an estate as will merge in the fee, so as to discharge a bond secured by the mortgage, if the mortgagee shall without caution acquire the equity of redemption. Added to these considerations is the remarkable fact in this case, that John and Joseph Dougherty, who reconveyed as heirs of Margaret Dougherty, and not at all under any power under the will of Margaret Sledge, should nevertheless recite that will and its powers in their reconveyance. That must have been so done at request of Penelope, to show that by said reconveyance she intended to replace that portion of the said lot under the will of Margaret Sledge, precisely as it stood before she sold it. It was, therefore, not land acquired in reality after the date of her will, and so her devisees are entitled to it.

2d. The next aspect of this point arises under our statute of 1858, by which after-acquired land is made to pass under a will previously executed. If it be admitted that this portion of said lot was to all intents and purposes acquired after said will of Penelope was executed, yet as she reserved power at the time of purchase to dispose of it by will, then, as to that, her being a married woman placed her under no disability to devise it. Being so, she is on equal terms with all other persons not under disability, and so the said statute gives the right to said land to the devisees under her will previously made. Her manifest intent to do that is too clear, under the express terms of her will, to admit any shadow of doubt. Her power to devise being indisputable, her intent to pass all her possessions at her death, "which I may *in any* manner have power to devise," is full compliance with said statute.

It is ordered and adjudged, that the defendant, Eliza, is entitled to hold the said house and lot as devisee of said Penelope, and as grantee of the other devisees. Further ordered and adjudged, that the plaintiff is entitled to one-twelfth of the real estate left by said Penelope, of which she reserved no power of appointment, and that he is also entitled to an account of the rents and profits of said real estate, and to receive one-twelfth thereof. This, however, is not intended to include the ten acres in possession of Adam Sledge. That I make no decree upon for want of evi-

dence.   Let the cause be remanded to the calendar for such further order as may be needful to give effect to this judgment, and it is hereby recommitted to Mr. Richardson, master in equity, to take the account herein required, and all other measures required for partition of said undivided real estate.   The costs of the case are adjudged to be paid out of the proceeds of the real estate which is subject to said partition.

Plaintiff, and defendant, Emily E. Whittemore, appealed upon exceptions which raised the points considered by this court.

*Messrs. Haynsworth & Cooper*, for plaintiff.

*Mr. Joseph H. Earle*, contra.

July 20, 1892.   The opinion of the court was delivered by

MR. CHIEF JUSTICE McIVER.   This case was originally heard at November term, 1890, but owing to a difference of opinion between the only two Justices then upon the bench, a re-argument became necessary, and the case was finally heard by a full bench during November term, 1891 ; and there still being a difference of opinion as to one of the questions involved, it has been thought best that the members of the court should file separate opinions.

Nancy Sledge, by her last will and testament, which was admitted to probate in March, 1861, devised to her daughter, Penelope Coghlan, who was then, and continued to be up to the time of her death, a married woman, a certain house and lot in the town of Sumter, "to be for her sole and separate use for her life, and not in any way subject to the debts or contracts of her husband—subject, however, to be disposed of in any manner her said daughter may direct in her life-time by deed, or by will at her death."   On the 2nd of July, 1861, Penelope, by virtue of the power conferred upon her by the will of her mother, and "for the purpose of disposing of the property, real and personal, and all the interests and estate of whatever description, devised and bequeathed to me in and by the said last will and testament, and for the purpose of disposing of all other property, real and personal, of which I may die possessed, and which I may, in any

way, have the power of devising and bequeathing." made her last
will and testament, which was duly admitted to probate, in com-
mon form, soon after her death in 1883, by which she devised
and bequeathed her entire estate "above referred to" to the de-
fendant, Emily, and certain other persons, who need not be speci-
fied, as it is conceded that they have transferred all their interests
to the said defendant, who is, therefore, practically the sole devisee.

After the execution of her will, the said Penelope, some time
in the year 1863, by virtue of the power contained in the will of
Mrs. Sledge, sold and conveyed a portion of the said lot to Mar-
garet Dougherty, who paid one half of the purchase money in
cash, and gave to said Penelope her bond, secured by a mortgage
of the premises, for the other half. This bond remaining unpaid
at the time of the death of Margaret Dougherty, her heirs at law,
in consideration of the surrender of said bond and mortgage, re-
conveyed the said premises, by deed dated 15th of January, 1867,
to the defendant, Gardner, "in trust for the sole and separate use
of the said Penelope Coghlan, during her life, with power to her
to dispose of the same by deed or will," &c. It further appears
that Nancy Sledge, previous to the execution of her will, to wit,
in 1853, conveyed to a trustee for said Penelope other real and
personal property, which was subsequently, to wit, in 1862, sold
under an order of the court; and that the said Penelope, in the
years 1869 and 1875, acquired, by purchase from third persons,
three other parcels of land, which she held in fee simple absolute
up to the time of her death, though the defendant, Adam Sledge,
sets up a claim to one of these parcels, which not having yet been
adjudicated, may be dismissed from further notice in considering
the present appeal.

On the 14th of April, 1886, this action was commenced by the
plaintiff for the partition of that portion of the lot in the town of
Sumter which had been conveyed to Margaret Dougherty, and
by her heirs reconveyed to the said Penelope (which, for conven-
ience, will be hereinafter designated as the Dougherty lot), as
well as of the three parcels of land conveyed to said Penelope in
fee simple absolute by third persons, and that the defendant,
Emily, be required to account to the plaintiff for the rents of the
said lands. This claim on the part of the plaintiff is based upon

the theory that the said Penelope died intestate as to the Dougherty lot and the said three parcels of land, and that he, as one of her heirs at law, is entitled to demand partition thereof. The case first came before his honor, Judge Cothran, when a demurrer was interposed by defendants for want of jurisdiction, which was overruled and defendants duly excepted. It was subsequenly heard, upon the merits, by his honor, Judge Pressley, who held that the whole of the lot in the town of Sumter passed under the will of Penelope to her devisees, and hence plaintiff had no claim to partition of any portion of that lot, but that he was entitled to partition of the other three parcels of land (reserving, however, the question as to defendant, Adam Sledge's, claim to one of those parcels). and to an account of the rents and profits thereof. From this judgment both parties appeal upon the several grounds set out in the record. Without stating or following these several grounds, we propose to consider what we understand to be the questions presented thereby.

The first in natural order is as to the jurisdiction of the court. It seems to be contended, that after a will has been admitted to probate by the tribunal appointed for that purpose, its validity is no longer open to question, except by appeal from the decree of the Court of Probate, and hence that the Court of Common Pleas has no jurisdiction to consider or determine the main question raised by this case, to wit, whether Penelope Coghlan died intestate as to the Dougherty lot. This position cannot be sustained. The admission of a will to probate, either in common or solemn form, does not preclude inquiry into the validity of one or more of the provisions therein contained, or of their proper construction or legal effect. It simply establishes the fact, that a will has been made according to the form prescribed by statute. *Tygart* v. *Peeples,* 9 Rich. Eq., 46; *Craig* v. *Beatty,* 11 S. C., 375. The question here is not whether Penelope Coghlan has made a will; that is conceded. But the question is, whether such will was made in execution of the power of appointment created by the will of her mother, as to a certain portion of the property of which she died seized and possessed.[1]

---

[1] See, too, *Blount* v. *Walker,* 28 S. C., 551.—REPORTER.

We concur, therefore, in the view which seems to have been taken both by Judge Cothran and Judge Pressley.

The next question is whether the three parcels of land acquired by Penelope Coghlan in 1869 and 1875 passed under her will. While it is true that under the provisions of the act of 1858, now incorporated in the General Statutes as section 1850, real as well as personal property acquired by a testator after the execution of his will, may pass thereby, yet as Penelope, at the time of making her will, was a married woman, and, therefore, not at that time endowed with testamentary capacity, except as an execution of a power, and as it is not pretended that she had ever been invested with any power to devise those lands, we do not think those parcels of land could pass under her will. The removal of her disability, arising from coverture, by the Constitution of 1868, could not render valid her will executed in 1861, unless it had been republished after such removal of her disability. Being "*intestable*," as the books term it, at the time of the execution of her will, except in the execution of a power, her will is a nullity in so far as it purports to dispose of any property over which she had not then been invested with the power of disposal. 1 Jarman on Wills (Perkins edit.), 37. Practically, therefore, Mrs. Coghlan never made a will disposing of these three parcels of land, and she must be regarded as having died intestate as to that property.

Our next inquiry is, whether there has been a valid disposition of the Dougherty lot by the will of Penelope Coghlan. It being admitted that this lot was conveyed to Margaret Dougherty by the said Penelope "in the exercise of the power conferred upon her by the will of the said Nancy Sledge," it seems to me that by such conveyance the power was extinguished—became *functus officio*—and hence such lot could not pass under the will of Penelope to her devisees, the title thereto having been vested in Miss Dougherty during the life-time of Mrs. Coghlan. Nor do I think that the will of Mrs. Coghlan executed in 1861 could operate as the execution of a power conferred upon her in the deed from the Dougherty heirs dated in 1867, unless such will had been republished after the execution of such deed, which was not done. It seems to me that it would

be extraordinary (not to use a stronger term) to say that a power could be executed before it was created. I do not see how it is possible to hold that a paper executed in 1861 could be the execution of a power not created until 1867. And as the Dougherty lot could not pass under the will of Mrs. Coghlan as after-acquired real estate, for the reason indicated in considering the same question as to the three parcels of land, I am of opinion that as to such lot Mrs. Coghlan died intestate, and hence it is subject to partition amongst her heirs at law. I think the judgment below should, therefore, in this respect, be reversed.

I cannot concur with the Circuit Judge in either of the reasons upon which he based his conclusion upon this point. The fact that Penelope Coghlan took a mortgage from Margaret Dougherty to secure the payment of the balance of the purchase money, cannot affect the question. The mortgage was a mere lien on the land, and did not transfer any estate or interest whatsoever therein. That was vested solely in Margaret Dougherty by the conveyance of Penelope Coghlan, in pursuance of the power conferred by the will of Nancy Sledge, and she held it absolutely free from any claim of interest therein, or of any right or power of appointment by Penelope, which she had held previously, but which she had parted with by such conveyance. When, therefore, the property was reconveyed to Mrs. Coghlan in 1867, in consideration of the surrender of the bond for the balance due on the purchase money, and a release of the lien of the mortgage she held under a new title, accompanied with a new power of appointment, then created, which was in no way referrable to the original power of appointment which had been extinguished by its exercise. I do not see how it is possible to reconcile the view taken by the Circuit Judge with the express terms of the act of 1791, as construed in several recent decisions of this court, whereby a mortgage has been deprived of every attribute of a conveyance and declared to operate simply as a lien.

It is stated by the Circuit Judge, as a fact supporting his view, that the reconveyance to Penelope by the Dougherty heirs, contains a recital of the powers conferred by the will of Nancy Sledge, which he assumes was made at the request of Penelope, for the purpose of showing that she intended to replace the pro-

perty into the condition under which it was placed by the will of
Nancy Sledge.　That reconveyance is not before us, and we do
not know what it contains, except as stated in the "Case."　But
whatever may be the terms of such recital, I cannot see how it
would be possible for the heirs of Miss Dougherty to revive pow-
ers created by the will of Nancy Sledge, which had been extin-
guished by the exercise thereof by the donee of such powers;
and I would rather be disposed to infer that the purpose of such
recital was to then create new powers, similar to those which had
been created by the will of Nancy Sledge.

. The second reason given by the Circuit Judge to sustain his
conclusion as to this point is not, in my judgment, well founded.
While it is true that the power conferred upon Mrs. Coghlan by
the Dougherty reconveyance to dispose of this property by will,
authorized her to do so notwithstanding her coverture, yet, at the
time her will was made, she could only do so in the execution of
such power, and, as I have said, her will executed in 1861, can-
not be regarded as the execution of a power which was never con-
ferred until six years afterwards.　I suppose there can be no
doubt that if the lot had never been reconveyed to Mrs. Coghlan,
her will could have had no possible effect upon it.　For when
she sold and conveyed this lot to Miss Dougherty, she parted
absolutely and forever with all right, title, and interest in, or
power over, said lot, which she had acquired under the will of
Mrs. Sledge.　When, therefore, she repurchased the lot in 1867,
she acquired a new and distinct title from that which she had pre-
viously held and had disposed of, and hence all her interest in and
power over the same must necessarily have been derived solely from
the deed of the Dougherty heirs ; and unless under that deed
she acquired and exercised the power to dispose of the same, it
is obvious to my mind that she had no more authority to dispose
of that lot than she would have had to dispose of any other real
estate of which she had made an absolute sale and conveyance.
It seems to me that there can be no doubt that the sale to Miss
Dougherty in 1863 was intended to be, and actually was, an ab-
solute sale and conveyance, and that there was nothing *preten-
sive* about it.　In this respect, therefore, this case differs widely
from the case of *Bowen* v. *Chase*, 94 U. S., 812, for the decision

in that case turned upon the fact that the sales to Hamilton and
Phillipson were in fact *"pretensive."* Indeed, while that case
does not decide the point, yet there is much in it favorable to the
view which I have adopted.

I do not see how it is possible to regard the reconveyance in
1867 as a rescission of the previous sale made in 1863, for it has
none of the features incident to such a transaction, and the papers
do not purport to show that any such idea was in the minds of
the parties. That portion of the purchase money which had been
paid was not refunded, so far as we are informed, and there is
nothing whatever to show that any provision with respect to that
was made, or was in the minds of the parties. Then, too, the
reconveyance was made to a third person ; and the very fact that
the reconveyance contained a power to Mrs. Coghlan to dispose
of the property by will, negatived the idea that the parties sup-
posed that the transaction was intended to be a mere cancellation
of the previous sale (even if they had the power to do so), and a
restoration of matters to their original condition. For if so, the
insertion of the power would have been a nugatory act.

It seems to me, therefore, that the turning point of the whole
case is, whether the will of Mrs. Coghlan, made in 1861, can be
regarded as an execution of a power never conferred until
six years afterwards. While it is true that a passage
from the recent work of Farwell on Powers has been
quoted to sustain the view contended for by respondent, yet it
seems to me that a close examination will show that that view is
based upon English decisions rendered since the changes in the
English Statute of Wills, and are therefore not applicable here.
At all events, it will be seen by reference to 18 Am. & Eng. En-
cycl. of Law, 933, that there is a conflict of authority elsewhere as
to this point; and as we have no distinct decision upon the ques-
tion in this State, we are at liberty to adopt the view most con-
sonant with reason, and with the principles which have been
recognized in this State.

Now, in the first place, it is difficult to understand how an act
done years prior to the creation of a power can be regarded as
an execution of such power. While it is true that a will takes
effect at the death of the testator—speaks at that time—yet it is

equally true that, for some purposes, it is legitimate and proper
to refer to the date of the execution of the will.   Prior to the act
of 1858, which has no reference to the execution of a power, real
estate acquired after the execution of the will did not pass ; and
upon the same principle it seems to me that a power to dispose
of real estate, created after the execution of the will, could not
be regarded as executed by such will.   But what is more to the
point, the doctrine is well settled. both here and elsewhere, that
where the question is as to whether a given act has been done in
the execution of a power, the vital inquiry is whether the donee
of the power. in doing the act, *intended* it as an execution of the
power.   See *Boyd* v. *Satterwhite*, 10 S. C., 45; *Bilderback* v.
*Boyce*, 14 *Id.*, 528; *Lee* v. *Simpson*, 134 U. S., 572.   Now, it
is absolutely impossible to suppose that Mrs. Coghlan intended,
at the time she executed her will in 1861, to exercise a power
which never existed until six years afterwards.   She did doubt-
less intend to execute the power conferred by the will of Mrs.
Sledge, but as so much of her will as related to the Dougherty
lot was unquestionably revoked by the subsequent conveyance to
Miss Dougherty, the devise to respondent must necessarily rest
upon the new power contained in the Dougherty deed. if, indeed,
it has anything to rest upon.

I think, therefore, that the judgment of the Circuit Court as
to this point should be reversed ; but as a majority of the
court. as will be seen by the separate opinions herewith filed, are
of a different opinion. the judgment of this court is, that the
judgment of the Circuit Court be affirmed.

MR. JUSTICE McGOWAN.   I concur in all the points of this
opinion of the Chief Justice, except that as to what is called "the
Dougherty lot."   As to that I cannot agree that Mrs.
Penelope Coghlan "died intestate," but, on the contrary,
it seems to that it passed to the appointees named in the
will of Penelope in the execution of the power given to her by
her mother's will.

In March, 1861, the will of Nancy Sledge was admitted to
probate, by which she devised to her daughter, Penelope Cogh-
lan, the lot in question to her sole and separate use during her

life, with a power of appointment by deed or will.   Soon after,
in July, 1861, the said Penelope executed her will, by which, in
the regular form prescribed for the purpose of the execution of
powers, she devised said lot to those now claiming it as the ap-
pointees under the power.   Mrs. Coghlan lived until 1883, when
she died, leaving her said will in full force, with the provision mak-
ing the appointments to the uses before stated.   If this were all,
there could be no doubt whatever that this unrevoked will of
Penelope would be regarded as a good execution of the power
given to her by her mother's will; and the defendant would take
as the appointee.

But it further appeared that, in the long interval between the
execution of the will of Penelope (1861) and her death in 1883,
she had in 1863 made a sale of the lot—had actually conveyed
it to one Mrs. Dougherty, who paid half of the purchase money
in cash, and gave a mortgage of the premises to secure the other
half; that, however, before the mortgage was satisfied Mrs.
Dougherty died and her heirs, in consideration of the surrender
of the mortgage, gave up the purchase, and by deed reconveyed
the lot to the defendant "Gardner, in trust for the sole and sepa-
rate use of the said Penelope during her life, with precisely the
same powers to dispose of by will or deed," as were given her by
the will of her mother.   Under these circumstances it is con-
tended that by the conveyance to Dougherty in 1863, afterwards
in effect cancelled, the power given to Penelope by the will of
her mother had been entirely *executed and extinguished;* and
that the new power embraced in the reconveyance of the Dough-
erty heirs back to the trustee of Mrs. Coghlan, could not be exe-
cuted by her will, for the reason that such new power was creat-
ed *subsequent* to the date of her will.   And therefore the lot was
necessarily *"the intestate property"* of Mrs. Coghlan, notwith-
standing the express execution of the power in her will.

I cannot concur in this view.   In the first place, this Dough-
erty transaction, considered as a whole, was not a complete exe-
cution of the power so *as to extinguish it.*   At the time of that
transaction the power had already been executed by the will of
Mrs. Coghlan   It is true she had the right to change her
will, and possibly that embraced the right to revoke the ap-

pointment to uses therein made.   But we are not informed that
she ever changed her will, or expressly revoked the appointments
made in it.   And I cannot think that the Dougherty transaction,
taken as a whole, must necessarily operate as such revocation;
that the transfer "by deed" was ever complete.   All the parties
concurred in undoing what had been partly done, and in restor-
ing, as far as possible, the *status quo*, by putting Mrs. Coghlan,
in respect to the lot, in the same condition she originally occu-
pied.   It seems to me that the construction contended for would
be very technical, giving effect to *a part* of the Dougherty trans-
action and ignoring the remainder.   "Questions have arisen
whether there can be a valid re-execution of a power in which the
original execution has failed either from fraud or from some other
defect; in the latter case it seems clear that it may be validly
re-executed," &c.   Farwell on Powers, page 166 and authorities.

  But if we must consider the first conveyance of the lot to Miss
Dougherty, although coupled with a mortgage of the premises, &c.,
··· as a good and unalterable execution of the power, so as to
*extinguish* the original power, *and revoke*, by implication,
     the prior appointment to uses in Mrs. Coghlan's will, then
it must follow that the return conveyance of the Dougherty heirs
brought back to her the title, *with a new declaration of the identi-
cal powers contained in the will of Mrs. Sledge*, "to dispose of by
will or deed," &c.   That being assumed, why may not the new
declaration of the powers be exercised by the will of Mrs. Cogh-
lan?   There is no doubt the lot is the same, and the powers are
the same.   Does it make any difference by whom the powers are
created, provided she has the title and the right to declare them?
But it is said that the will of Mrs. Coghlan, executed in 1861,
could not operate as the execution of a power created in 1867;
that a power cannot be executed before it is created.   This may
be the general rule, but if so, it does not seem to apply to the
execution of powers "by will."   If a power may be executed by
will, when must it be considered as done?   When the will is
executed, or when it takes full effect by the death of the testator?
If the rule is the same as to the execution of powers, as it is in
relation to ordinary property, *it speaks at the death*, and in that
case Mrs. Coghlan's will took full effect in 1883, long after the

new declaration of the powers in the Dougherty deed. This seems to be the settled doctrine. "A general power of appointment may be well exercised by *a will*, executed previously to the creation of the power, and that, too, by a mere residuary gift. * * * And it seems that a limited power of appointment, may also be well exercised by a will executed previously to the creation of the power, if there be a sufficient reference to the power or the subject matter thereof." See the late admirable treatise of Mr. Farwell on Powers, pages 185, 188. and authorities.

I think that the judgment below should be affirmed.

MR. JUSTICE POPE. The members of this court have readily disposed of all the questions raised by this appeal, except that relating to the judgment of the Circuit Court as to the effect of the conveyance of Mrs. Penelope Coghlan, executed in 1863, of one-half of a lot in the town of Sumter to Margaret M. Dougherty. upon the devise of the same as contained in the will of the former, signed on the 2d July, 1861, and left unrevoked at her death in the year 1884. Much of the delay in handing down the judgment of this court is due to the desire on our part to take more time for reflection in order to do our full duty to the parties to this controversy, in the decision of a novel question, so far as the decisions of the courts of this State are concerned.

Nancy Sledge devised certain property to her daughter Penelope (who had intermarried with one Thomas J. Coghlan) for life, with the power to said Penelope to dispose of the same by deed or will. As before remarked, Mrs. Coghlan, on the 2d July, 1861, made her last will and testament, by the provisions of which all her estate, real and personal, was given to her niece, the defendant, Mrs. Emily E. Whittemore. In 1863 she conveyed a part of the real estate devised by her mother's will to Margaret M. Dougherty, to wit, one-half of a lot of land in the town of Sumter, at the price of $10,000, of which she was paid one-half in cash, the balance being on a credit. In 1867 Margaret M. Dougherty having died intestate without having paid the credit portion of the purchase money, her heirs at law conveyed said lot of land to Henry W. Gardner in trust for the use of said Penelope Coghlan for life, with power to dispose of the

same by deed or will, or, in other words, just in effect as she had held said lot of land before she conveyed the same to Margaret M. Dougherty; and in consideration thereof Mrs. Coghlan cancelled the bond and mortgage of Margaret M. Dougherty for the credit portion.

The question now arises as to whether this last named lot of land passes under the will of Mrs. Coghlan, or whether she did not die *intestate* as to the same. It should be remarked just here, that by reason of her coverture the laws of this State placed restrictions upon her testamentary capacity as to property acquired prior to 16 April, 1868, the date of the adoption by the people of this commonwealth of the present Constitution, which contains a provision justly enlarging the powers of married women. There is no question of the testamentary capacity of Mrs. Coghlan if the lot of land we have referred to is brought under the powers vested in her by the will of Nancy Sledge, her mother. Here is the point of difficulty. Let us meet it fairly and squarely.

It is not denied that, as a general rule, where one is vested by a deed or will with the execution of a power, the exercise of that power, according to law, exhausts it. This general rule is made the basis of appellant's argument here, and it must be admitted, in all frankness, that it is very strong. But it is contended, on the other hand, that if by reason of any circumstances the appointee of the power, voluntarily or by operation of law, is clothed anew with the original power, so that its attempted or completed exercise is blotted out forever and no longer exists in law or fact to impede the full exercise of the original power, then such power may be exercised. The force of this last argument is met in the case at bar in this way: It is admitted that in 1867 the lands were reconveyed by the heirs of Margaret M. Dougherty to Penelope Coghlan's trustee upon similar trusts to those expressed in the will of Nancy Sledge, yet it was neither expressly made subject to such powers of Nancy Sledge's will, nor was there a direct assertion or execution by Penelope Coghlan of the newly acquired powers under the Dougherty heirs' deed to her trustee, either by deed or will, executed after 1867.

Mr. Justice McGowan, in his separate opinion, has quoted

with approval several references to views on this subject announced in the work of Mr. Farwell on Powers. The writer has derived some satisfaction from the case of *Bowen* v. *Chase*, 94 U. S., 812, in which case Mr. Justice Bradley delivered the judgment of that court. Without intending or attempting to fully outline the facts and conclusions of that case, it will be proper to state some of each. Stephen Jumel, by two deeds of similar import, executed in 1827 and 1828, conveyed to one Werckmeister certain real estate in differents parts of the city of New York in trust, so that the rents and profits should go to his wife, Eliza Brown Jumel, for life, with a general power of appointment during her life-time, and on failure to make such appoinment, to her heirs in fee simple. Thereafter in the year 1828, Eliza Brown Jumel made an appointment, by a deed duly executed, of all the lands conveyed in trust, that at her death all the estate should be conveyed by her trustee to such persons as she by her last will might designate; but in the event of her dying intestate, then her trustee should convey the same to her husband for life, and after his death to Mary Jumel Bownes in fee simple. By a deed duly executed she conveyed a large part of the trust estate to Alexander Hamilton 10 January, 1834, for the expressed condition of $15,000. On 21 day of October, 1834, Alexander Hamilton re conveyed the land to Werckmeister upon the same trusts declared in the original deed of trust.

Questions arose in regard to this transaction as to the effect of the deed to Alexander Hamilton. It was admitted that under the deed of Stephen Jumel full power was given Eliza Brown Jumel to alienate any of the trust estate. but it was contended that. having done so for an expressed valuable consideration. notwithstanding Alexander Hamilton reconveyed to her trustee under all the original trusts and powers, thereby reinvesting her, so to speak, with all the rights she acquired under the original deed of her husband, Stephen Jumel. the appointment under her deed. dated in 1828, in favor of Mary Jumel Bownes. was ineffectual, and her estate descended to her heirs at law. However the Supreme Court of the United States held that the sale to Hamilton, and the reconveyance of Hamilton to Werckmeister as trustee, was equivalent to a cancellation of the pretended pur-

chase. These are the words of the court on that question : "The
conveyance to Hamilton may admit of more doubt. But look-
ing at the whole transaction, the conveyance and reconveyance,
we cannot avoid the conclusion that it was intended as a means
of getting rid of the former appointment. *The reconveyance by
Hamilton to Werckmeister was equivalent to a cancellation of the
pretended purchase.* [Italics the writer's.] It was not a sale
made by Hamilton to Werckmeister, nor a settlement made by
him for any purposes of his own. *It was simply a handing
back of the property.* [Italics the writer's.] In our judgment,
therefore, the two conveyances amounted to a mere formal trans-
fer and retransfer ; and if any sale was ever intended, it was re-
scinded by the mutual consent of the parties to it. We are of
opinion that this transaction did not, any more than that with
Phillipon, affect the appointment in question, or the estate of the
appointee, whether that estate is to be regarded as a legal or
equitable one "

It is not contended that the case of *Bowen* v. *Chase, supra,* is
decisive of the question now under consideration. The facts and
circumstances of the two cases are not the same. But it may be
remarked that the discussion of the principles governing the
execution of the power of appointment that took place in the
case just quoted, serves to make clear some of the difficulties that
exist in our own case. One of the difficulties in the
mind of the writer arose from the fact that while it was
admitted that the deed reconveying the lot in Sumter did
clothe Mrs. Coghlan with the power of appointment, yet she did
not execute that power of appointment unless the will signed by
her in 1861 could be said to do so, and this will was not exe-
cuted in view of that deed of reconveyance, for the will was
made confessedly six years before the deed of conveyance was
executed. Still, as the deed of conveyance executed in 1867
was not made as an independent or separate transaction, apart
from the attempt of Mrs. Coghlan to execute the power with
which she was clothed by the will of her mother, Nancy Sledge,
but was, in fact, a cancellation of such attempted exercise of
such power, the writer is unable to see how it should be con-

strued to "affect the appointment in question or the estate of the appointee" in the case at bar.

For the reasons herein given, in addition to those contained in the separate opinion of Mr. Justice McGowan, the writer is of opinion that the appeal should be dismissed.

Judgment affirmed.