## 11798

### HEMBREE *ET AL.* v. BOLTON *ET AL.*

#### (128 S. E., 841)

1. REFERENCE—MASTER MAY CHANGE RULINGS AS OFTEN AS HE WISHES BEFORE FINDING REPORT.—Master may change his rulings as often as he sees fit before filing report, any error being correctible on appeal from report.

2. WILLS—PROBATE DOES NOT PRECLUDE INQUIRY INTO VALIDITY, CONSTRUCTION, OR LEGAL EFFECT OF PROVISIONS.—Probate of will in either common or solemn form does not preclude inquiry into validity, proper construction, or legal effect of provisions therein, but simply establishes fact that will has been made according to statutory form.

3. WILLS—PARTIES NOT OFFERING PROOF OF ALTERATION WITHIN FOUR YEARS AFTER PROBATE IN COMMON FORM CANNOT PROBATE WILL IN SOLEMN FORM.—Parties offering no testimony as to alteration of will within four years after it was probated in common form cannot afterward probate it in solemn form.

4. WILLS—PRESUMPTION OF ALTERATION AFTER EXECUTION INDISPUTABLE AFTER EXPIRATION OF FOUR YEARS, WITHOUT PETITION FOR PROBATE IN SOLEMN FORM.—After four years from filing of will with alteration apparent on face, without petition for probate in solemn form, presumption that alteration was made after execution of will became indisputable fact.

Before SHIPP, J., Spartanburg, 1924. Appeal dismissed.

Action by J. E. Hembree and others against Pauline Bolton and others. Judgment for defendants, and plaintiffs appeal.

*Messrs. Lyles, Daniel & Drummond,* for appellants, cite: *Testimony of attesting witnesses:* 118 S. C., 32. *Alterations presumed made after execution:* 118 S. C., 32; Wills

copied in "Wills" book; Code of 1922, Vol. 3, Sec. 2191. *Will as probated conclusive:* 40 Cyc., 1368–74; 28 R. C. L., 275 and 377; 9 Rich. L., 131; 17 L. R. A. (N. S.), 184; 39 Am. Rep., 753.

*Messrs. R. B. Pasley, J. G. Galbraith* and *J. D. Andrews,* for respondents, cite: *Circuit Court determines contents of will:* 118 S. C., 32; 113 S. C., 240; 4 Strob. Law, 191; 36 S. C., 428; 16 S. C., 40; 11 S. C., 375; 9 Rich. Eq., 46; 40 Cyc., 1231. *Original, not copy, construed:* 118 S. C., 304; 95 S. C., 338; 16 S. C., 587. *Questions not raised below not reviewable:* 11 S. C., 138; 87 S. C., 8; 103 S. C., 75; 105 S. C., 100. *Findings of fact:* 100 S. C., 324. *Burden of upsetting findings of fact:* 105 S. C., 171. *How will probated:* Code 1922, Vol. 3, Sec. 5351. *Formalities established by probate:* 36 S. C., 423; 16 S. C., 40. *Right to contest provisions of will;* 11 S. C., 375; 9 Rich. Eq., 46; 36 S. C., 428. *Alterations:* 118 S. C., 32; Cheves Eq., 1; 4 Strob. L., 191. *Similar will construed:* 113 S. C., 240.

July 6, 1925.

The opinion of the Court was delivered by MR. CHIEF JUSTICE GARY.

The facts are stated in the report of the Master, which was confirmed on appeal to the Circuit Court by a formal order. The said report is as follows:

"This suit was brought by the plaintiffs for the purpose of partitioning certain real estate situated near Cross Anchor, in the lower part of Spartanburg County, and belonging to the estate of the late Frances J. Hembree. The defendant was served March 29, 1923, as is shown by the affidavit of J. B. Stribling on the reverse side of the summons and complaint. An order of reference was passed by Judge T. S. Sease on August 17, 1923, in pursuance of which I have held a reference and have taken the testimony, which is filed as a part of the record. At the reference a

motion was made by attorneys for the plaintiffs that J. G. Galbraith, Esq., be made a party defendant, on the ground that since this action was begun he has acquired by deed the interest in the land of the defendant, Pauline Bolton. The defendant, Galbraith, consented to be made a party, and waived the time in which to answer, and also waived the four days' notice of this motion. I have, therefore, passed an order *nunc pro tunc,* making Mr. Galbraith a party defendant, for the reasons just mentioned.

"The defendant, Pauline Bolton, has answered the complaint through her attorneys, in which she alleges that on or about the 17th day of January, 1904, Frances J. Hembree, her mother, died seized and possessed in fee of the land which is sought to be partitioned, and alleges that the deceased left a will whereby she devised said land to her husband for life, and that after this life estate had fallen in, a certain provision was made therein for unmarried children, the remainder of the estate having been devised absolutely in fee to that one of her children who remained at home and took care of the testatrix during her lifetime, and of W. M. Hembree during his life.

"The question, therefore, that presents itself to me, before a partition of the property can be recommended, is whether or not Mrs. Frances J. Hembree died intestate as to the distribution of her property, or whether under the will, which will hereinafter be more fully discussed, the defendant, Pauline Bolton, is the beneficiary, which she alleges in her answer.

"A short statement of the facts concerning the will and the circumstances leading up to this suit will now be in order: It seems that some time during the year 1904 Mrs. Frances J. Hembree died, leaving her will, a copy of the paragraph on which the defendant, Mrs. Bolton, bases her claim being as follows:

" 'I give and bequeath unto my beloved husband my entire estate during his lifetime, and after his death, I

give and devise the said estate to my unmarried children so long as any one remains unmarried. Then in case if it so be that any one of my unmarried children comes in and takes care of me and my beloved husband in our old age, that one shall fall heir to my entire estate.'

"In the sentence, 'Then in case if it so be that any one of my unmarried children comes in and takes care of me and my beloved husband in our old age, that one shall fall heir to my entire estate,' attention is to be given to the fact that there has been a distinct mark with pen and ink through the prefix 'un' in the word 'unmarried'.

"After the death of Mrs. Hembree, the will was duly probated in common form and recorded by the Probate Judge. In copying the original will on the official record, the sentence was made to read as follows: 'Then in case if it so be that any one of my married children comes in and takes care of me and my beloved husband in our old age, that one shall fall heir to my entire estate.' If the instrument is to be taken as recorded by the Probate Judge, there is no question but what the defendant, Pauline Bolton's, claim is defeated, for it is not claimed that any married children qualified under this provision.

"At the time of the first reference, plaintiffs' attorneys objected to the introduction of any testimony other than that which may be directed to show that some married children of the testatrix came in and took care of her and her husband in her old age, on the ground that the will, as disclosed by the solemn records of the Probate Court, discloses that the title is as alleged in the complaint, and unless the testimony shows that some married child of the testatrix qualified himself or herself to fill the description of the one who in such event was to be the sole beneficiary under the will, because the Probate Court in admitting the will to probate had original jurisdiction, and it was its unescapable duty at that time to decide what was the will of the testatrix, and the Probate Court did so. At that time I sustained

the objection, and allowed testimony to the contrary to be taken on the excluded sheet. However, since reviewing the matter and making a careful investigation as to the law, I am convinced that the objection should not be sustained, but that the testimony, on the other hand, should be allowed as competent. I, therefore, wish to overrule my own ruling in this matter and make the testimony on the excluded sheet competent. I base my reasons for this on the case of *Burkett v. Whittemore,* 36 S. C., 432; 15 S. E., 616, in which the Court states that: 'The admission of a will to probate merely establishes the fact that it has been made as required by statute, that is, that the testator executed it in the presence of the required number of witnesses, and that he had the capacity to make a will.'

"Also in the case of *Prater v. Whittle,* 16 S. C., 40, in which the Court says: 'The probate of a will settles all questions as to the formalities of its execution and the capacity of the testator, but does not affect the validity or invalidity of any particular clause or settle any question of construction. A revocation, therefore, which does not wholly defeat the will, presents no question for the Probate Court to determine. All questions as to the construction of the will must be settled by subsequent proceedings in the equity jurisdiction.'

"I am, therefore, forced to conclude that it is within the jurisdiction of this Court to go behind the will, as recorded by the Probate Judge, and to examine and construe the instrument as found in its original form. It is argued by the attorneys for the plaintiffs that, after a period of four years has elapsed since the time the will was probated, no appeal having been taken, that, in that event, this Court is without jurisdiction when the question of construing the will is presented. I am not in accord with that theory, for to me it does not seem to coincide with the law as declared by our Supreme Court in numerous cases.

"It now becomes necessary to consider the time with reference to the execution of the will as to when the mark through 'un' in the word 'unmarried' was made. If this alteration was made prior to the execution, it naturally becomes a part of the will, or if the change was made after execution and was done in the same solemn form as is required by law, it would then be valid and acceptable. There was very little testimony introduced to show just when and how this change was made. Mr. Alexander, the scrivener and subscribing witness, swore that he had no recollection of any change having been made. In a very recent case decided by our Supreme Court, in the case of *Guerin v. Hunt,* 118 S. C., 32; 110 S. E., 71, the law is declared to be that when 'alterations have been made in a will, the general presumption of law is that they were made subsequent to the execution of the paper, and are, therefore, void, and the burden of proof rests on the proponent of the will to show they were made prior to execution.'

"There was no testimony at all introduced by the proponents of the will seeking to make valid and legalize the alteration of the will. In the absence of such testimony, and with the law on the subject in mind, I am compelled to hold that the alteration is void.

"In reading the will, I have tried to determine what the intention of the testatrix was, and have reached the conclusion that she intended to give her property to the son or daughter who took care of her and her husband during their last days, and I am convinced that the defendant, Pauline Bolton, met every requirement that was intended to be met. There was sufficient evidence introduced which proved conclusively to my mind that the defendant, Pauline Bolton, was as faithful and patient to the care and attention of her parents as it was possible for her to be, and I would therefore recommend that the title to the land described in the summons and complaint be declared by the Court to be

in the defendant, Pauline Bolton, and that the costs of this action be paid by the plaintiffs."

The following are the appellants' exceptions:

"(1) In sustaining the Master's reversal of his ruling excluding the testimony (which was taken on the excluded sheet and afterwards held admissible by the Master), directed toward showing that the defendant, Pauline Bolton, an unmarried child of the testatrix, 'came in and took care of her and her husband in their old age,' the error being that such testimony was wholly irrelevant in that it could have no bearing on the case unless it be permissible to vary the solemn record of the Probate Court, which had exclusive jurisdiction of the probate of the will, and whose judgment thereon, unappealed from, is conclusive.

"(2) In not holding that the Court of Probate had exclusive original jurisdiction of the matter of the probate of this will, and that, before admitting it to probate, it was the duty of the Probate Judge, which he is presumed to have discharged, to satisfy himself as to whether the erasure, apparent on the face of the will, was made before or after execution, and that having recorded the will with the stricken 'un' omitted, the Probate Court is presumed to have ascertained and satisfied itself that the said erasure was made before execution, and no proceeding to review said action having been instituted within the statutory 4-year period, the judgment of the Probate Court was final and conclusive.

"(3) In not holding that the erasure, apparent on the face of this will when it was offered for probate, made it the unavoidable duty of the Probate Court to ascertain to its satisfaction whether the erasure was made before or after the execution, and whether, if made after execution, there was a sufficient republication, which duty the Probate Court is presumed to have performed, with the result that it ascertained that the erasure was made either prior to execution or that there was a sufficient republication, any

holding contrary necessarily contradicting the solemn record made by the Probate Judge in recording this will, it being his duty under the law to record it as admitted to probate.

"(4) In not holding that, in admitting this will to probate and in recording the same as admitted to probate, the Probate Court thereby adjudicated the due execution of the will, including by necessary implication that the erasure was made prior to execution, or that there was a sufficient republication after the erasure was made.

"(5) In not holding that where erasures or alterations are apparent upon the face of a will, as in this case, they cannot be presumed to have been made before execution, and that, therefore, the Probate Court, under its duty, could not and would not admit the same to probate without satisfactory proof that they were in fact made before execution, or that the will was republished thereafter, and in admitting this will to probate and recording it as admitted, that the Probate Court thereby determined that the erasure was made before execution.

"(6) In not holding that this will was admitted to probate in the Court of proper exclusive jurisdiction many years ago with an erasure apparent upon its face when the matter was capable of being inquired into and ascertained, and, having recorded the will omitting the erased part, the Probate Court thereby adjudged that the erasure was made prior to execution, and that it was the duty of the Court in the present case to give credit to the Probate Court as having rightly done what it did.

"(7) The Court erred in sustaining the Master's report, in that thereby a solemn adjudication of the Probate Court was set aside and overruled in a proceeding where it came only collaterally in question.

"(8) The Court erred in sustaining the Master in his holding that the Court of Common Pleas in this proceeding has jurisdiction to receive testimony on the question of alterations in the will, the error being that all such ques-

tions are necessarily committed to the exclusive jurisdiction of the Probate Court, whose action thereon can be reviewed only in the manner provided for by statute, to wit, a proceeding to prove the will in solemn form.

"(9) The Court erred in sustaining the Master's holding that the defendant, Pauline Bolton, 'met every requirement that was intended to be met,' the error being that, even if the will could be made to read as the Master reads it, the same would not be intelligible or consistent, the undisputed testimony showing that at the time of the death of the testatrix there were several unmarried children living with her and her husband, the defendant, Pauline Bolton, being the youngest and being merely a child; that several unmarried children continued to live in the home, taking care of the husband for several years, and Pauline Bolton also. The Master's construction making the will read in effect that the land was to go to any unmarried child who might be living on the land with her husband at the time he died.

"(10) The Court erred in sustaining the Master's holding that the defendant, Pauline Bolton, fulfilled the testamentary condition because, under the undisputed testimony, all of the unmarried children were living with the testatrix at the time of her death, and from the instrument itself, construed in the light of this situation, the Court should have held that the testatrix would not refer to her 'unmarried' children as 'coming in and taking care of my beloved husband and me in our old age,' but that she had reference to her married children who had left home, and those who might thereafter marry and leave home."

We would affirm the judgment of the Circuit Court for the reasons stated in the report of the Master, but for the fact that the exceptions are quite numerous, and raise questions that require further discussion.

The first exception cannot be sustained for the reason that the Master has the right to change his rulings as often as he sees fit, as they are not final

until the filing of his report. Any errors he may have committed may be corrected on appeal from his report.

2     We will consider next the force and effect of the probate of the will. The following facts are undisputed :·

"It is undisputed that the original paper copied above is written in pen and ink, and that the prefix 'un' in the third 'unmarried' was stricken through with a pen, as indicated above; that the will was admitted to probate in common form on the 12th day of March, 1904, in the Probate Court for Spartanburg County; that the record discloses no other proceedings relative to this will at the time of its admission to probate, or within four years thereafter, than the usual oath by one of the subscribing witnesses, who, in this instance, was William Alexander; that the Probate Judge recorded the said paper in Will Book J, page 103, and that, as so recorded, the last sentence in the devising portion of said will reads as follows: 'Then in case, if it be so, that any one of my married children comes in and takes care of me and my beloved husband in our old age, that one shall fall heir to my entire estate.'

"The original will has been on file in the office of the Probate Judge, subject at all times to inspection, and showing plainly that a pen had been run through the prefix 'un' above referred to.

"It is also undisputed that the life tenant under the will died in 1921; that no married child of the testatrix complied with the condition stated in the will; that the defendant, Pauline Bolton, remained unmarried and lived in the house with her father, the life tenant, from her birth until his death. After his death, and prior to the commencement of this action, she married; and that the plaintiffs and the defendant, Pauline Bolton, are the children and grandchildren of the testatrix, who will take the land

under the statutes of distribution unless the will effected a different disposition of it."

This statement appears in the report of the Master:

"There was no testimony at all introduced by the proponents of the will seeking to make valid and legalize the alteration of the will. In the absence of such testimony, and with the law on the subject in mind, I am compelled to hold that the alteration is void."

There was no appeal from the finding of fact in this statement. The exceptions do not assign error in this finding of fact. The following appears in the record:

"W. M. Alexander, being duly sworn, says:

"Direct examination by Mr. Pasley:

"Q. Mr. Alexander where do you live? A. I live at Enoree.

"Q. Did you know Mrs. Frances J. Hembree? A. Yes, sir.

"Q. State whether or not you wrote her will for her? A. Yes, sir.

"Q. Is that it? A. Yes, sir.

"Q. Did you sign as one of the witnesses to the will? A. Yes, sir.

"Q. At the time that you wrote the will and when she signed it, was this 'un' crossed out? (It is understood that plaintiffs object to all testimony on this particular point.) A. No, sir; I don't think that is my writing. It seems that it is a little heavier to me than the pen I used, and I don't remember striking out any word.

"Q. You did the writing and you signed it? A. Yes, sir.

"Q. Did Jim Hembree help to make that will? A. I wrote that will at the dictation of Mrs. Hembree. I don't remember any one else having anything to say in the make-up of the will. I wrote it just as Mrs. Hembree dictated it."

The law relative to such facts is thus stated in *Burkett v. Whittemore,* 36 S. C., 428; 15 S. E., 616:

"It seems to be contended, that after a will has been admitted to probate by the tribunal appointed for that purpose, its validity is no longer open to question, except by appeal from the decree of the Court of Probate, and hence that the Court of Common Pleas has no jurisdiction to consider or determine the main question raised by this case, to wit, whether Penelope Coglan died intestate as to the Dougherty lot. This position cannot be sustained. The admission of a will to probate, either in common or solemn form, does not preclude inquiry into the validity of one or more of the provisions therein contained, or of their proper construction or legal effect. It simply establishes the fact that a will has been made according to the form prescribed by statute. *Tygart v. Peeples,* 9 Rich. Eq., 46; *Craig v. Beatty,* 11 S. C., 375."

We also quote from *Prater v. Whittle,* 16 S. C., 40:

"The probate of a will settles all questions as to the formalities of its execution and the capacity of the testator, but does not affect the validity or invalidity of any particular clause or settle any question of construction. A revocation, therefore, which does not wholly defeat the will, presents no question for the Probate Court to determine. All questions as to the construction of the will must be settled by subsequent proceedings in the equity jurisdiction. So little has the Probate Court to do with the contents of a will or its construction, that it is laid down as an elementary principle that 'the bare nomination of an executor, without giving any legacy or appointing anything to be done by him, is sufficient to make it a will, and as a will it is to be proved.' 1 Wms. Ex., 185; *Jolliffe v. Fanning & Phillips,* 10 Rich., 200."

From the foregoing facts and authorities it clearly appears that it was not necessary for the Probate Judge to decide, nor did he undertake to adjudicate, any question

except that *prima facie* the proponents were entitled to have the will probated.

The appellants' attorneys contend that there was a presumption that the Probate Judge decided upon the validity of the alteration, and that after four years the probate of the will could not be contested by a demand for probate of the will in solemn form. By failing to offer testimony as to the alteration of the will within four years after it was probated in common form, the appellants did not thereafter have the right to probate the will in solemn form.

We proceed to consider the probate of the will with reference to the alteration thereof. In *Guerin v. Hunt,* 118 S. C., 32; 110 S. E., 71 (the leading case from our State on the subject of the alteration of wills), we find the following statements of the rule:

"When it is evident that alterations have been made in a will, the general presumption of law is that the alterations were made subsequently to the execution of the paper, and are, therefore, void (*Toebbe v. Williams,* 80 Ky., 561 [661]; *Van Buren v. Cockburn,* 14 Barb. [N. Y.], 118), and unquestionably the burden of proof rests upon the proponent of the will of showing that such alterations were made prior to execution (*Dodge v. Haskell,* 69 Me., 429; *Ely v. Ely,* 6 Gray [Mass.], 439; *Priest v. Whitacre,* 78 Va., 151).

"An exception to the general rule that the law presumes alterations in a will to have been made after execution is that, where blanks are left in wills, the filling of the blanks is presumed to have been prior to execution. In the matter of *Voorhees,* 6 Dem. Sur. (N. Y.), 162. With these propositions of law before us, we come to an application of them to this case. * * *

"Under the law as set out, all of these interlineations, or filling of blanks, are presumed to have occurred prior to the execution of the paper. The other alterations at law are

presumed to have been made subsequently to the execution of the will, and are, therefore, void unless satisfactorily shown by the evidence to have been made before."

. We call special attention to the following language from that decision:

"There can be no question that an attesting witness must be prepared to attest not only the mere fact of signature, but, in the presence of evident alterations, that the paper produced was the paper executed, *and that the condition it is in when produced was its condition when executed. If this is not done, then the presumption of law comes in rejecting the alterations and sustaining the will as originally drawn,* unless such alterations as a matter of law may be presumed to have been made prior to execution." (Italics added.)

When the will was filed with the alteration apparent upon the face thereof, it became a part of the record with the presumption that the alteration was made after the execution of the will, this presumption continued, but after the expiration of four years within which the appellants had the opportunity of petitioning for probate in solemn form, the presumption became an indisputable fact that the alteration was made after the will was executed.

Appeal dismissed.

MESSRS. JUSTICES WATTS and MARION concur.

MR. JUSTICE COTHRAN (dissenting) : This is an action for the partition of certain real estate, which, at the time of her death in 1904, belonged to Frances Hembree. The plaintiffs and the defendant, Pauline Bolton, are the heirs at law of Mrs. Hembree; the defendant, Galbraith, is a grantee of Pauline Bolton. Mrs. Hembree left a will which was admitted to probate in common form, in 1904, shortly after her death. The will as originally drawn, written in long hand by a scrivener who was also a witness, contained this clause, which was practically the entire will, with the exception of the formal parts :

"I give and bequeath unto my beloved husband my entire estate during his lifetime, and after his death I give and devise the said estate to my unmarried children so long as one remains unmarried. *Then in case, if it so be that any one of my unmarried children comes in and takes care of me and my beloved husband in our old age, that one shall fall heir to my entire estate.*"

When the will was presented for probate, it was shown that a pen had been drawn through the prefix 'un' to the word 'unmarried', in the underscored portion of the foregoing extract, making it read:

"Then in case, if it so be that any one of my *married* children comes in, etc."

In this condition the will was admitted to probate and recorded in Will Book, as if it had originally read "married children," no defense having been made to the obvious alteration. No objection appears to have been entered to the probate of the will, and no proceedings have been prosecuted to require the proof of the will in due form of law.

At the time of the death of Mrs. Hembree in 1904, there were four unmarried children living with their parents; the defendant, Pauline Bolton, was then about 15 years old. Mr. Hembree married a second time about the year 1906, and his second wife died in 1911. Pauline lived with her father before and thereafter, until his death in 1921, marrying about a year after his death.

It is conceded on all sides that if the disputed word should be held to be "married", not one of the married children complied with the condition named in the will of taking care of the old people so as to entitle them to claim the benefit of the provision above quoted, and that, therefore, the estate would be considered intestate property, distributable among the heirs at law.

The plaintiffs contest the claim of Pauline Bolton, contending that the word must be held to be "married", and

that even if it should be held to be "unmarried", she did not comply with the conditions named.

Pauline Bolton contended that the word should be held to be as originally written in the will, "unmarried", and that she as an "unmarried child" had fully complied with the conditions of the will, which entitles her to the entire estate.

The case was referred to the Master, who filed a report holding, in effect, that the alteration from "unmarried" to "married", had been made *after* the execution of the will; that the word must remain as originally written, "unmarried"; and that as Pauline Bolton, as an *"unmarried* child," had complied with the conditions of the will, she was entitled to the entire property. The Circuit Judge, in a brief and formal decree, confirmed the report of the Master. The plaintiffs have appealed.

In the view which this Court takes of the legal issues involved, it is not deemed necessary to decide the contested issue of fact, whether Pauline Bolton, as an unmarried child, came in and took care of the testatrix and her husband in their old age. Whether that issue should be decided in her favor or against her is entirely immaterial, if she has failed to bring herself within the class of children defined in the will. Having come to the conclusion, for the reasons hereinafter stated, that the word in dispute must be held to be "married", it may be assumed as a fact that Pauline Bolton, as an "unmarried" child, performed the services referred to in the will, without concluding the right of the plaintiffs to partition, for such decision is conclusive against the claim of Pauline Bolton, she not being a "married child" at the time they were rendered.

Upon the trial before the Master, the defendant, Pauline Bolton, offered the testimony of the scrivener of the will, who was also an attesting witness thereto, who testified, in rather an indifferent manner, that when he had finished writing the will and it had been signed by the testatrix,

11—S. C. R.—132.

the deletion of the prefix "un" to the word "unmarried", had not been made. This testimony, upon objection by the plaintiffs, was at first rejected by the Master, but at a later stage of the trial he reversed his ruling, and received and considered it.

As before stated, the will was admitted to probate in common form, upon the affidavit of the scrivener as one of the witnesses. The alteration appeared plainly upon its face. The Probate Judge passed the usual order admitting the will to probate, and recorded it in the Book of Wills, as a copy of the will "admitted to probate," pursuant to Section 2191 of the Code. It was probated and recorded as if it had read "married", without any alteration. No question was made at that time, or at any time thereafter within the four years allowed for probate in due form of law (commonly referred to as "solemn form," Section 5351). Nineteen years after the probate in common form was had, in a collateral proceeding, the objection to the will as probated and recorded, is sought to be raised, that the alteration was made after the execution of the will, and that, therefore, the will as probated and recorded is not the will of the testatrix, but that the true will is fixed by disregarding the alteration.

There can be no controversy, we think, over the proposition that the action of the Court of Probate, in admitting a will to probate in common form, is an adjudication by that Court of a matter within its jurisdiction.

The statute, Section 5351, provides for proof required in the probate of a will in common form, and declares that, "If such proof shall satisfy the Judge of Probate that the paper is the last will and testament of the deceased, he shall admit it to probate in common form," which, of course, can only be evidenced by an order, a decree, a judgment of that Court.

In *Crosland v. Murdock,* 4 McCord, 217 (quoting syllabus), it is held:

"The power of the Court of Common Pleas in cases of appeals from the ordinary on questions in relation to the validity of wills, is entirely appellate, though the matter is examined over *de novo,* and the verdict of the jury is not more conclusive against a devisee, than the decree of the ordinary. It is but the judgment of the Ordinary."

In 40 Cyc., 1223, it is said:

"The term 'probate' * * * relates to proving and establishing a will before the officer or tribunal having jurisdiction to determine its validity, and as there used, it includes, not only the evidence, jurisdictional and otherwise, presented to the Court, *but also the judicial determination by the Court* on that evidence, that the instrument is what it purports to be."

At page 1370, it is said:

"As a proceeding to probate a will is a judicial one, a judgment or decree admitting a will to probate stands upon the same footing as a judgment of any other Court of competent jurisdiction; and after the lapse of time allowed to have it annulled or set aside * * * it stands as an adjudication that the instrument probated is the *last will and testament* of the deceased and is conclusive of all matters properly before the Court for determination."

Section 5351, Subd. (2) of the Code of 1922, provides: "Probate in common form *shall be good,* unless some person * * * interested to invalidate the said paper as a will shall give notice to the Judge of Probate, within four years next after such probate * * * that he * * * requires it to be proved in due form of law"; which clearly recognizes the action of the Probate Court as a judgment, standing good for all time, with the exception stated.

The probate of a will in common form, being the judgment of a Court of competent jurisdiction, is entitled to the respect accorded to the judgments of all Courts of like character; namely, that it is conclusive of all matters directly connected with the passing of the judgment, and that

it is immune from attack in any collateral proceeding.

The first question, therefore, for determination is whether the admission to probate of a will, with an apparent alteration on its face, probated and recorded in a manner giving effect to that alteration, will be held to have carried with it the finding, essential to its probate in said altered form, either that the alteration was made before the execution of the will, or that the will was republished after the alteration.

Upon applicaton for the probate of a will in common form, the Probate Court is expected to find these facts before issuing its order: (1) That the testator signed the will; (2) that it was signed in the presence of three witnesses who attested it in his presence and in the presence of each other; (3) that the testator was at the time, of sufficient legal capacity to make a will; (4) that he was free from undue influence, fraud or imposition in making his will; (5) that the paper produced, just as it appears, is the will actually executed by the testator.

That the Probate Court has the power, and is under an obligation, to inquire into an obvious alteration appearing upon the face of the will, in order to determine the question whether the paper produced was the will of the testator as it stands, and if not, to establish what was the will, I do not think we can admit of doubt.

In *Guerin v. Hunt,* 118 S. C., 32; 110 S. E., 71, the Court, in an exceedingly able opinion by Hon. E. M. Rucker, Acting Associate Justice, concurred in by the Chief Justice and Justices Watts, Fraser, and Cothran, held:

"There can be no question that an attesting witness must be prepared to attest not only the mere fact of signature, but, in the presence of evident alterations, that the paper produced was the paper executed, and that the condition it is in when produced was its condition when executed."

"Where interlineations are made in a will *after its execution,* they do not destroy the will as a whole, but each

provision of the will annulled by such interlineation should be set forth on the probate of the will" (*In re Stickney's Will,* 41 Misc. Rep., 70; 83 N. Y. S., 650), which, of course, could not be done without an inquiry by the probating officer, as to the time the alteration occurred.

If, therefore, the validity of the alteration should, or even could, have been brought in issue before the Probate Court, on the application for probate of the will in common form, under the principles announced in *Johnston-Crews Co. v. Folk,* 118 S. C., 470; 111 S. E., 15, the adjudication of the Probate Court is *res adjudicata,* until it shall have been reversed by a proceeding to prove the will in solemn form.

If the Probate Court is expected to establish the facts above stated, before admitting the will to probate in common form, it follows that his decree speaks the verity of these facts. In *Del Campo v. Camarillo,* 154 Cal., 647; 98 P., 1049, it is held:

"A valid and effectual probate of a will operates to establish the will *according to its tenor.*"

"The probate of a will by a Court of competent jurisdiction is conclusive of the validity *and contents of the will. Box v. Lawrence,* 14 Tex., 545.

"The probate of a will before the Clerk in common form is conclusive evidence of the validity thereof until [it] is vacated or declared void by a competent tribunal." *Holt v. Ziglar,* 163 N. C., 390; 79 S. E., 805.

"A judgment of the Circuit Court, admitting a will to probate, is conclusive as to the validity of the will." *Bowen v. Allen,* 113 Ill., 53; 55 Am. Rep., 398.

"Probate in common form becomes conclusive after the lapse of time allowed by law." *Sutton v. Hancock,* 118 Ga., 436; 45 S. E., 504.

"A decree admitting a will to probate is conclusive upon the world, and is conclusive upon one who was not privy

to the proceeding, being one in *rem.*" *Bunce v. Galbrath,* 268 Pa., 389; 112 A., 143.

"The only difference between the finality of probate in solemn and common form, is as to the time when the probate becomes conclusive; probate in solemn form becoming conclusive on the rendering of the decree to that effect, while probate in common form becomes conclusive on the expiration of the time fixed by statute for contesting wills after its probate." *Horton v. Barto,* 57 Wash., 477; 107 P., 191; 135 Am. St. Rep., 990.

In *Linnard's Appeal,* 93 Pa., 313; 39 Am. Rep., 753, it is said:

"Moreover, the probate of the will as we now find it, was an adjudication of its due execution, including by necessary implication the republication of the instrument after the alteration in question was made. This established, *prima facie* at least, the validity of the of the legacy. * * * In the distribution of the estate, the will was before the Court for consideration, and as a guide in determining who were entitled to participate in the fund; but the question of its due execution, in whole or in part, did not properly arise in that proceeding. That matter had been adjudicated and no appeal had been taken."

In *Gaines v. New Orleans,* 6 Wall., 642, 703 (18 L. Ed., 950), it is held:

"When a will is duly probated by a State Court of competent jurisdiction, that probate is conclusive of the validity and contents of the will in this Court."

"The proponent of a will has the burden of showing that an alteration was made before execution, but after probate the will as probated is presumed to be valid." 2 Schouler, Wills, § 782.

"The effect of probate, indeed * * * is to authenticate the formal disposition made by decedent as his last will, with all due formalities." 2 Schouler, Wills, § 825.

"The propounding of a will for probate * * * is a judicial act and binding upon all Courts and persons and presumed to be legal until revoked or set aside." Note 21 L. R. A., 680.

"Ex parte probate ascertains nothing further than the *prima facie* validity of the will, and that the instrument is seemingly what it purports to be on its face." Note 21 L. R. A., 684, citing cases.

"It [probate] settles the question that it is the will of the testator." *Strong v. Perkins,* 3 N. H., 517.

"The Probate Court is vested with full power to inquire into the sufficiency of the authentication and to ascertain whether, under the proof offered, the will should be admitted to record." Note 21 L. R. A., 681, citing *Calloway v. Cooley,* 50 Kan., 743; 32 P., 372.

The will, as probated and recorded, giving effect to the alteration, stands for the further reason in this case. The probate, being the judgment of a Court of competent jurisdiction, cannot be impeached in a collateral proceeding, except upon the ground of fraud or want of jurisdiction. "The judgment of probate has the force of an adjudication in *rem,* and is conclusive until set aside by appeal or other direct attack, and cannot be collaterally attacked, where the Court had jurisdiction." Schouler, Wills, § 827.

It would be a useless waste of time and space to cite the unbroken line of authorities sustaining this proposition. *Upson v. Horn,* 3 Strob., 108; 49 Am. Dec., 633; Decennial Dig. Wills, 421; Decennial Dig. Judgments, 470.

The statute, Code, § 5351, above quoted, is conclusive upon the proposition, for it specifically provides that the probate in common form shall be good unless a proceeding to require proof in due form of law be commenced within four years from the date of the probate.

The judgment of this Court should be that the judgment of the Circuit Court be reversed, and that the case be remanded to that Court for partition as prayed for.